## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## CENTRAL DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| | * | CIV. No.  11-3017 |
| v. | * | |
| **PAYDAY FINANCIAL, LLC,** | * | AMENDED COMPLAINT FOR |
| a South Dakota limited liability company, | * | CIVIL PENALTIES, |
| also d/b/a Lakota Cash, Big Sky Cash, | * | INJUNCTIVE, AND OTHER |
| and Big $ky Cash; | * | EQUITABLE RELIEF |
| **GREAT SKY FINANCE, LLC,** | * | |
| a South Dakota limited liability company, | * | |
| also d/b/a Great Sky Cash, Great $ky | * | |
| Cash, and GSky; | * | |
| **WESTERN SKY FINANCIAL, LLC,** | * | |
| a South Dakota limited liability company; | * | |
| **RED STONE FINANCIAL, LLC,** | * | |
| a South Dakota limited liability company, | * | |
| also d/b/a Red Stone Cash; | * | |
| **MANAGEMENT SYSTEMS, LLC,** | * | |
| a South Dakota limited liability company, | * | |
| also d/b/a GSky; | * | |
| **24-7 CASH DIRECT, LLC,** | * | |
| a South Dakota limited liability company; | * | |
| **RED RIVER VENTURES, LLC,** | * | |
| a South Dakota limited liability company; | * | |
| **HIGH COUNTRY VENTURES, LLC,** | * | |
| a South Dakota limited liability company; | * | |
| **FINANCIAL SOLUTIONS, LLC,** | * | |
| a SD limited liability company; and | * | |
| **MARTIN A. WEBB,** individually and | * | |
| as an officer of Payday Financial, LLC; | * | |
| Great Sky Finance, LLC; Western Sky | * | |
| Financial, LLC; Red Stone Financial, | * | |
| LLC; Management Systems, LLC; | * | |
| 24-7 Cash Direct, LLC; Red River | * | |
| Ventures, LLC; High Country | * | |
| Ventures, LLC; and Financial Solutions, | * | |
| LLC | * | |
| | * | |
| Defendants. | * | |

Plaintiff, the Federal Trade Commission ("FTC"), pursuant to Section 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 56(a)(1), for its complaint alleges:

1.     The FTC brings this action under Sections 5(a), 5(m)(1)(A), 13(b), 16(a) and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a) and 57b, to obtain monetary civil penalties and injunctive and other equitable relief against Payday Financial, LLC, also d/b/a Lakota Cash, Big Sky Cash, and Big $ky Cash; Great Sky Finance, LLC, also d/b/a Great Sky Cash, Great $ky Cash, and GSky; Western Sky Financial, LLC; Red Stone Financial, LLC, also d/b/a Red Stone Cash; Management Systems, LLC, also d/b/a GSky; 24-7 Cash Direct, LLC; Red River Ventures, LLC; High Country Ventures, LLC; Financial Solutions, LLC; and Martin A. Webb (collectively, "Defendants") for acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); the FTC's Trade Regulation Rule Concerning Credit Practices ("Credit Practices Rule"), 16 C.F.R. § 444; and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and its implementing Regulation E, 12 C.F.R. § 205.10, in connection with the offering and extension of credit in the form of high-fee, short-term "payday" loans, and the collection of those loans.

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and 15 U.S.C. §§ 45(m)(1)(A), 45(a), 53(b), 56(a) and 57b.

3.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 1395(a), and 15 U.S.C. § 53(b).

**PLAINTIFF**

4.     The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Credit Practices Rule, 16 C.F.R. § 444, which prohibits unfair and deceptive credit practices and EFTA, 15 U.S.C. §§ 1693-1693r, which regulates the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, the Credit Practices Rule, and EFTA and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, and 1693o(c).

6.     The FTC is also authorized to initiate federal district court proceedings, by its own attorneys, to recover civil penalties for violations of the Credit Practices Rule if the Attorney General fails to initiate such litigation after notice from the FTC of its intention to initiate such litigation.  15 U.S.C. § 56(a).  With respect to the instant proceeding, the Attorney General received

such notice from the FTC and has stated that the Department of Justice will not initiate the proceeding.

**DEFENDANTS**

7.     Defendant Payday Financial, LLC, also doing business as Lakota Cash, Big Sky Cash, and Big $ky Cash, is a South Dakota limited liability company with its principal place of business at 612 E Street, Timber Lake, South Dakota.  Payday Financial incorporated Defendants Great Sky Finance, Western Sky Financial, Red Stone Financial, Management Systems, 24-7 Cash Direct, Red River Ventures, and High Country Ventures, and served as the managing member of those entities until at least February 2011.  Payday Financial advertises and offers its payday loans to consumers through the Internet websites www.lakotacash.com, www.bigskycash.com, and www.paydayfinancialllc.com.  Payday Financial transacts or has transacted business in this District and throughout the United States.

8.     Defendant Great Sky Finance, LLC, also doing business as Great Sky Cash, Great $ky Cash, and GSky, is a South Dakota limited liability company with its principal place of business at 612 E Street, Timber Lake, South Dakota.  Great Sky advertises and offers payday loans to consumers through the Internet website www.greatskycash.com.  Great Sky Finance transacts or has transacted business in this District and throughout the United States.

9.     Defendant Western Sky Financial, LLC, is a South Dakota limited liability company with its principal place of business at 612 E Street, Timber Lake, South Dakota.  Western Sky advertises and offers payday loans to consumers through the Internet website www.westernsky.com.  Western Sky Financial transacts or has transacted business in this District and throughout the United States.

10.     Defendant Red Stone Financial, LLC, also doing business as Red Stone Cash, is a South Dakota limited liability company with its principal place of business at 612 E Street, Timber Lake, South Dakota.  Red Stone Financial advertises and offers payday loans to consumers through the Internet website www.redstonecash.com.  Red Stone Financial transacts or has transacted business in this District and throughout the United States.

11.     Defendant Management Systems, LLC, also doing business as GSky, is a South Dakota limited liability company with its principal place of business at 612 E Street, Timber Lake, South Dakota.  Management Systems advertises and offers payday loans to consumers through the Internet website www.managementsystemsllc.net.  Management Systems transacts or has transacted business in this District and throughout the United States.

12.     Defendant 24-7 Cash Direct, LLC, is a South Dakota limited liability company with its principal place of business at 612 E Street, Timber Lake, South Dakota.  24-7 Cash advertises and offers payday loans to

consumers through the Internet website www.24sevensolution.com.  24-7 Cash

Direct transacts or has transacted business in this District and throughout the

United States.

    13.    Defendant Red River Ventures, LLC, is a South Dakota limited

liability company with its principal place of business at 612 E Street, Timber

Lake, South Dakota.  In 2009, Red River Ventures advertised and offered

payday loans to consumers through the Internet websites

www.togethercash.com and www.citiviewcash.com.  Red River Ventures

transacts or has transacted business in this District and throughout the

United States.

    14.    Defendant High Country Ventures, LLC, is a South Dakota limited

liability company with its principal place of business at 612 E Street, Timber

Lake, South Dakota.  In 2009, High Country Ventures advertised and offered

payday loans to consumers through the Internet websites

www.cashtransfercenter.com; www.impactcashusa.com; www.cashnetusa.com;

and www.pdlloancent.com.  High Country Ventures transacts or has transacted

business in this District and throughout the United States.

    15.    Defendant Financial Solutions, LLC, is a South Dakota limited

liability company with its principal place of business at 612 E Street, Timber

Lake, South Dakota.  Financial Solutions transacts or has transacted business

in this District and throughout the United States.

16.     Defendant Martin A. Webb is the owner and president of Defendant Payday Financial.  Webb also is the organizer, managing member, and registered agent of Defendant Financial Solutions.  He serves as the registered agent of Defendants Payday Financial, Great Sky Finance, Western Sky Financial, Red Stone Financial, Management Systems, 24-7 Cash Direct, Red River Ventures, and High Country Ventures.  Webb also served as the authorized manager of Defendants Great Sky Finance, Western Sky Financial, Red Stone Financial, Management Systems, and  24-7 Cash Direct until at least February 2011.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Webb resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

17.     Defendants Payday Financial, Great Sky Finance, Western Sky Financial, Red Stone Financial, Management Systems, 24-7 Cash Direct, Red River Ventures, High Country Ventures, and Financial Solutions (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the unlawful acts and practices alleged herein.  Corporate Defendants have conducted the business practices described herein through interrelated companies that have common ownership, officers, managers, business

functions, employees, and office locations.  Because Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged herein.  Defendant Webb has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Corporate Defendants that constitute the common enterprise.

## COMMERCE

18.    At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## BACKGROUND ON FEDERAL AGENCY DEBT COLLECTION

19.    The federal government is the owner of many types of debts.  In 1996, Congress enacted the Debt Collection Improvement Act of 1996 ("DCIA"), Pub. L. 104-134 § 31001, to allow federal agencies to collect their debts more effectively by eliminating the need for federal agencies to obtain a court order before garnishing a debtor's wages.  Once a federal agency obtains a court judgment, it is permitted to contact employers directly and demand that they garnish the wages of debtors who owe money to the federal government.  The Department of the Treasury's Financial Management Service is responsible for implementing the DCIA.

20.    Federal agencies seeking to garnish wages pursuant to the DCIA typically send a package of documents to the debtor's employer that includes: (1) a document entitled "Letter to Employer & Important Notice to Employer," (2) a document entitled "Wage Garnishment Order (SF-329B)," (3) a document entitled "Wage Garnishment Worksheet (SF-329C)," and (4) a document entitled "Employer Certification (SF-329D)." The "Letter to Employer" states:

> One of your employees has been identified as owing a delinquent nontax debt to the United States. The Debt Collection Improvement Act of 1996 (DCIA) permits Federal agencies to garnish the pay of individuals who owe such debt without first obtaining a court order. Enclosed is a Wage Garnishment Order directing you to withhold a portion of the employee's pay each period and to forward those amounts to us. We have previously notified the employee that this action was going to take place and have provided the employee with the opportunity to dispute the debt.

**DEFENDANTS' BUSINESS ACTIVITIES**

21.    Since at least August 2007, Defendants have offered consumers payday loans ranging from $300 to $2,525 through Internet websites and television advertisements. A payday loan is the common name used for a short-term, high-fee, unsecured loan, often made to consumers to provide needed funds in anticipation of an upcoming paycheck. Defendants collect on payday loans through Defendants Payday Financial LLC/Lakota Cash and Financial Solutions, LLC.

## Unfair and Deceptive Credit Practices

22.     Consumers who are interested in obtaining a payday loan from Defendants complete an online application via one of Defendants' Internet websites or call an advertised toll-free number to apply.  Regardless of how they apply, all consumers are required to sign the loan agreement electronically to indicate that they accept the terms of the payday loan.  Consumers electronically sign for their loan by accessing the loan documents electronically and typing in their name where the document indicates "Borrower's E-Signature." One of the terms of the payday loan is a wage assignment clause that typically reads:

> Should you default on this Agreement, you hereby consent and agree to the potential garnishment of wages by us or our assigns or service agents to ensure repayment of this Agreement, fees and costs associated in the collection of outstanding principal and interest.

23.     The Credit Practices Rule prohibits the use of wage assignment clauses, unless the clause is:  (a) by its terms revocable at the will of the debtor; (b) a payroll deduction plan or preauthorized payment plan, commencing at the time of the transaction, in which the consumer authorizes a series of wage deductions as a method of making each payment; or (c) applicable only to wages or other earnings already earned at the time of the assignment.  Defendants' wage assignment clause meets none of these requirements.  The assignment clause in Defendants' contracts is not revocable

at the will of the debtor.  Nor is Defendants' assignment clause a payment plan that commences at the time of the transaction; rather, it takes effect only if and when the consumer becomes delinquent.  Finally, Defendants' assignment clause does not apply only to wages already earned, but also to the future earnings of consumers.

24.    In Defendants' standard online payday loan application, the wage assignment clause appears in very small print and is located several pages before the signature block. Because of the small size of the print and the location of the clause, many consumers are likely to be unaware of the existence of the wage assignment clause.

25.    The loan agreement also includes a "Garnishment Opt-Out" provision that states: "You may choose to opt out the Garnishment provision, but only by following the process set-forth below.  If you do not wish to be subject to this Garnishment Provision, then you must notify us in writing within (10) calendar days of the date of this Agreement." Although the loan agreement includes an "opt out" provision claiming that consumers can "opt out" of the wage assignment clause, the provision only allows consumers to opt out for a limited period of time and only if they do so in writing.

26.    In many cases, Defendants' loan application also contains a provision that requires the consumer to authorize Defendants to initiate

electronic funds transfers for withdrawal of the consumer's recurring loan payments as a condition of obtaining credit from Defendants.

**Collection Practices**

27.   If a consumer does not pay back a payday loan on time, Defendants engage in efforts to collect the debt.

28.   To collect a consumer's debt, Defendants frequently attempt to garnish the consumer's wages.  Defendants do not obtain a court order permitting garnishment.  Instead, Defendants mail to the consumer's employer a wage garnishment packet.  A typical garnishment packet sent by Defendants includes documents titled:  (1) "Important Notice to Employer" and (2) "Wage Garnishment," which includes a "Wage Garnishment Worksheet" and an "Employer Certification."  The documents sent by Defendants are very similar, in both form and substance, to the documents sent by federal agencies when seeking to garnish wages for nontax debts owed to the United States.  In addition to the garnishment forms, Defendants also typically send to the consumer's employer a copy of the consumer's loan application.

29.   The "Important Notice to Employer" states:

> One of your employees has been identified as owing a delinquent debt to Payday Financial LLC/Lakota Cash. The Indian Commerce Clause of the United States Constitution and the laws of the Cheyenne River Sioux Tribe permit agencies to garnish the pay of individuals who owe such debt without first obtaining a court order.  Enclosed is a Wage Garnishment Assignment

> directing you to withhold a portion of the employee's pay each pay period and to forward those amounts to Payday Financial, LLC. While not applicable to tribal entities, Payday Financial, LLC follows the general principals [sic] of the Debt Collection Improvement Act of 1996 (DCIA). The employee has previously consented to such a garnishment and we have notified the employee that this action was going to take place providing the employee with the opportunity to dispute the debt, and/or make payment arrangements.

30.    In fact, Defendants do not have legal authority to garnish the pay of consumers who owe an alleged debt without first obtaining a court order.

31.    In many cases, Defendants do not notify consumers that a garnishment action is going to take place, nor do they provide consumers an opportunity to dispute their alleged debt or make payment arrangements with Defendants before sending a garnishment packet to the consumers' employers.

**Collection Suits**

32.    Defendants do not make payday loans to residents of the Cheyenne River Sioux Reservation or the State of South Dakota.

33.    After consumers submit loan applications to Defendants, containing their social security numbers, bank account numbers, and other personal information, Defendants send to approved consumers a loan agreement.

34.    Defendants' loan agreement states that Defendants do not have a presence in the state of South Dakota.

35.   Defendants' loan agreement further includes the following statements:

> This Loan Contract is subject solely to the exclusive laws and
> jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River
> Indian Reservation.  By executing this Loan Contract, you, the
> borrower, hereby acknowledge and consent to be bound to the
> terms of this Loan Contract, consent to the sole subject matter
> and personal jurisdiction of the Cheyenne River Sioux Tribal
> Court, and further agree that no other state or federal law or
> regulation shall apply to this Loan Contract, its enforcement or
> interpretation.
> . . . .
> You . . . expressly agree to the sole application of the Indian
> Commerce Clause of the US Constitution and the laws of the
> Cheyenne River Sioux Tribe regarding this Agreement and the
> potential garnishment of wages, and the sole jurisdiction of the
> Cheyenne River Sioux Tribal Court regarding any and all
> matters arising therefrom.

36.   In numerous instances, Defendants have filed complaints seeking garnishment orders in the tribal court of the Cheyenne River Sioux Tribe against consumers who are not tribal members and who do not reside on the Cheyenne River Sioux Reservation or elsewhere in the State of South Dakota. The amount at issue in those lawsuits has been as little as $320.

37.   The Cheyenne River Sioux Tribal Court does not have jurisdiction to decide the complaints and issue the garnishment orders sought by the Defendants.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

38.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

39.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act. Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

### COUNT I

40.    In numerous instances, in connection with the collection of payday loans from consumers, Defendants have represented to the consumers' employers, directly or indirectly, expressly or by implication, that Defendants are legally authorized to garnish the pay of consumers who owe debts to Defendants without first obtaining a court order.

41.    In truth and in fact, Defendants are not legally authorized to garnish the pay of consumers who owe debts to Defendants without first obtaining a court order.

42.    Therefore, Defendants' representation as set forth in Paragraph 40 of this Complaint is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

43.    In numerous instances, in connection with the collection of payday loans from consumers, Defendants have represented to consumers' employers, directly or indirectly, expressly or by implication, that before sending a garnishment request to the employers, Defendants have notified consumers that a garnishment action is going to take place and have provided the consumers with the opportunity to dispute the debt or make payment arrangements on the debt that is the subject of the garnishment.

44.    In truth and in fact, in numerous instances, before sending a garnishment request to consumers' employers, Defendants have neither notified consumers that a garnishment action is going to take place nor provided consumers with the opportunity to dispute the debt or make payment arrangements on the debt that is the subject of the garnishment.

45.    Therefore, Defendants' representation as set forth in Paragraph 43 of this Complaint is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

46.    In numerous instances, in connection with the collection of payday loans from consumers, Defendants have communicated with consumers' employers and co-workers without consumers' knowledge or consent,

disclosing the existence and, sometimes, the amount of consumers' purported debt to employers and co-workers.

47.   Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

48.   Therefore, Defendants' acts and practices as set forth in Paragraph 46 of this Complaint constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## VIOLATIONS OF THE CREDIT PRACTICES RULE

49.   The Credit Practices Rule promulgated by the FTC under Section 18 of the FTC Act, 15 U.S.C. § 57a, became effective on March 1, 1985, and has remained in full force and effect since that date.

50.   Defendants are "lender[s]" as that term is defined in the Credit Practices Rule, 16 C.F.R. § 444.1(a).

51.   The Credit Practices Rule prohibits lenders, in connection with the extension of credit to consumers, from taking or receiving from a consumer an obligation that constitutes or contains an assignment of wages or other earnings unless:  (i) the assignment by its terms is revocable at the will of the debtor, (ii) the assignment is a payroll deduction plan or preauthorized payment plan, commencing at the time of the transaction, in which the consumer authorizes a series of wage deductions as a method of making each payment, or

(iii) the assignment applies only to wages or other earnings already earned at the time of the assignment.  16 C.F.R. § 444.2(a)(3).

52.   Pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Credit Practices Rule constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).  Pursuant to Section 444.2(a) of the Credit Practices Rule, violations of the Credit Practices Rule constitute unfair acts or practices in violation of the FTC Act and all functions of the Commission under the FTC Act are available to the Commission to enforce compliance with the Credit Practices Rule.  16 C.F.R. § 444.2(a)

## COUNT IV

53.   In numerous instances, in connection with the extension of credit to consumers, Defendants have taken or received from consumers an obligation that constitutes or contains an assignment of wages or other earnings where the assignment:  (i) by its terms is not revocable at the will of the debtor, (ii) is not a payroll deduction plan or preauthorized payment plan, commencing at the time of the transaction, in which the consumer authorizes a series of wage deductions as a method of making each payment, and (iii) does not apply only to wages or other earnings already earned at the time of the assignment, in violation of Section 444.2(a)(3) of the Credit Practices Rule, 16 C.F.R. § 444.2(a)(3).

54.    Under 16 C.F.R. § 444.2(a), the acts and practices set forth in Paragraph 53 of this Complaint constitute unfair acts or practices in violation of the FTC Act.

### VIOLATIONS OF EFTA AND REGULATION E

55.    Defendants are "persons" as this term is defined in Section 205.2(j) of Regulation E, 12 C.F.R. § 205.2(j).

56.    Section 913(1) of EFTA, 15 U.S.C. § 1693k(1), provides that no person may condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers.

57.    Section 205.10(e)(1) of Regulation E, 12 C.F.R. § 205.10(e)(1), provides that "[n]o financial institution or other person may condition an extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers, except for credit extended under an overdraft credit plan or extended to maintain a specified minimum balance in the consumer's account."

58.    The Federal Reserve Board's Official Staff Commentary to Regulation E, Section 205.10(e)(1), 12 C.F.R § 205.10(e)(1)-1, Supp. I, provides that creditors may not require repayment of loans by electronic means on a preauthorized recurring basis.

## COUNT V

59.    In numerous instances, in connection with offering payday loans to consumers,  Defendants have conditioned the extension of credit on mandatory preauthorized transfers, thereby violating Section 913(1) of EFTA, 15 U.S.C. § 1693k(1), and Section 205.10(e)(1) of Regulation E, 12 C.F.R § 205.10(e)(1).

60.    Under Section 918(c) of EFTA, 15 U.S.C. § 1693o(c), every violation of EFTA and Regulation E constitutes a violation of the FTC Act.

61.    By engaging in the violations of EFTA and Regulation E set forth in Paragraph 59 of this Complaint, Defendants have engaged in violations of the FTC Act.

## ADDITIONAL VIOLATIONS OF SECTION 5 OF THE FTC ACT

## COUNT VI

62.    In numerous instances, in connection with the collection of payday loans from consumers, Defendants have sued consumers in a distant court that lacks jurisdiction.

63.    Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

64.    Therefore, Defendants' acts and practices as set forth in Paragraph 62 of this Complaint constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## COUNT VII

65.     In numerous instances, in connection with the collection of payday loans from consumers, Defendants have represented, directly or indirectly, expressly or by implication, that Defendants can obtain a valid order to garnish consumers' wages by suing consumers in the Cheyenne River Sioux Tribal Court.

66.     In truth and in fact, Defendants cannot obtain a valid order to garnish consumers' wages by suing their consumers in the Cheyenne River Sioux Tribal Court.

67.     Therefore, Defendants' representation as set forth in Paragraph 65 of this Complaint is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

68.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the Credit Practices Rule, and EFTA and Regulation E.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

69.     Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, and as implemented by 16 C.F.R. § 1.98(d), authorizes this Court to award monetary civil penalties of not more than $11,000 for each violation of the Credit Practices Rule prior to February 10, 2009, and $16,000 for each violation of the Credit Practices Rule on or after February 10, 2009.  The Defendants' violations of the Credit Practices Rule were committed with actual knowledge or knowledge fairly implied on the basis of objective circumstances, as set forth in Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45 (m)(1)(A).

70.     Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57(b), empower this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations  of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that this Court, as authorized by Sections 5(a), 5(m)(1)(A), 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A),

53(b), 57b, and 1693o(c), and the Court's own equitable powers, requests that the Court:

A.     Enter judgment against the Defendants and in favor of Plaintiff for each violation alleged in this complaint;

B.     Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, preliminary injunctions;

C.     Enter a permanent injunction to prevent future violations of the FTC Act, the Credit Practices Rule, and EFTA by Defendants;

D.     Award Plaintiff monetary civil penalties from the Defendants for every violation of the Credit Practices Rule;

E.     Award such relief as the Court finds necessary to redress injury to consumers  resulting from Defendants' violations of the FTC Act, the Credit Practices Rule, and EFTA including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

F.     Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated this 1st day of _March_, 2012.

WILLARD K. TOM
General Counsel

LASHAWN M. JOHNSON
K. MICHELLE GRAJALES
NIKHIL SINGHVI
Federal Trade Commission
600 Pennsylvania Avenue, N.W., NJ-3158
Washington, DC  20580
(202) 326-3057 (Johnson)
(202) 326-3172 (Grajales)
(202) 326-3480 (Singhvi)
(202) 326-3768 (facsimile)
Email: ljohnson@ftc.gov, mgrajales@ftc.gov,
nsinghvi@ftc.gov

Dated this 1st day of _March_, 2012.

BRENDAN V. JOHNSON
United States Attorney

CHERYL SCHREMPP DUPRIS
Assistant United States Attorney
P.O. Box 7240
Pierre, SD 57501
(605) 224-5402 (telephone)
(605) 224-8305 (facsimile)
Email: cheryl.dupris@usdoj.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION