# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## CENTRAL DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| PAYDAY FINANCIAL, LLC, et al., | * |
| | * |
| Defendants. | * |

Civil Case No. 11-3017

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO COUNTS ONE AND THREE THROUGH SEVEN

## TABLE OF CONTENTS

I.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II.  This Court Should Grant Summary Judgment In Favor Of Plaintiff . . .   2

    A.   Standard For Summary Judgment  . . . . . . . . . . . . . . . . . . . . .   2

    B.   This Court Has Jurisdiction.  . . . . . . . . . . . . . . . . . . . . . . . . .   2

    C.   The Uncontroverted Facts Show That Defendants Have Engaged in
        Deception and Unfair Acts, Violating the FTC Act. . . . . . . . . . .   3

        1.   Defendants Have Engaged In Deceptive Conduct.  . . . . . .   3

            a.   Defendants Have Misrepresented to Consumers'
                Employers That Defendants Were Legally Authorized to
                Garnish the Pay of Consumers Without First Obtaining
                Court Orders (Count I).  . . . . . . . . . . . . . . . . . . . . .   5

            b.   Defendants Have Deceptively Made Misrepresentations
                to Consumers that Defendants Can Sue Consumers in
                the Cheyenne River Sioux Tribal Court and Can
                Thereby Obtain Valid Orders to Garnish Consumers'
                Wages (Count VII).  . . . . . . . . . . . . . . . . . . . . . . . .   7

        2.   Defendants Have Engaged in Unfair Conduct.  . . . . . . . . .  10

            a.   Defendants Have Unfairly Communicated with
                Consumers' Employers and Co-workers without
                Consumers' Knowledge or Consent, Disclosing the
                Existence and Sometimes the Amount of Consumers'
                Purported Debts to Employers and Co-workers
                (Count III). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

            b.   Defendants Have Unfairly Sued Consumers in a
                 Distant Court That Lacks Jurisdiction (Count VI).  . 13

    D.   The Uncontroverted Facts Show Defendants Have Violated the
        Credit Practices Rule (Count IV). . . . . . . . . . . . . . . . . . . . . . . 15

i

E.  The Uncontroverted Facts Show Defendants Have Violated EFTA and Reg E (Count V) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

F.  The Corporate Defendants Are Liable for Injunctive Relief and Equitable Monetary Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

G.  Defendant Webb Is Liable for Injunctive and Monetary Relief . . . 20

III.  The Relief Sought in the Proposed Final Order is Appropriate. . . . . . . 21

A.  The Injunctive Provisions Are Appropriate. . . . . . . . . . . . . . . . . . 22

1.  Ban . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

2.  Further Prohibited Business Activities . . . . . . . . . . . . . . 24

3.  Monitoring Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . 25

B.  The Monetary Relief Is Appropriate. . . . . . . . . . . . . . . . . . . . . . . 26

1.  Disgorgement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

2.  Civil Penalty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

IV.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

D.S.D. Civ. LR 7.1.B(1) Word Count Compliance Certificate. . . . . . . . . . . . . .31

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). . . . . . . . . . . . . . . . 2

*Ford Motor Co. v. FTC*, 120 F.2d 175, 183 (6th Cir.), *cert. denied*,
    314 U.S. 668 (1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*FTC v. Accusearch, Inc.*, 570 F.3d 1187, 1193 (10th Cir. 2009) . . . . . . . 10, 21

*FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1231 (9th Cir. 1999) . . . . . . . 20

*FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 573 (7th Cir. 1989) . . . . . 19, 20

*FTC v. Bronson Partners, LLC*, 564 F. Supp.2d 119, 135-36 (D. Conn. 2008)  9

*FTC v. Check Investors*, 2005 U.S. Dist. LEXIS 37199, at *3
    (D.N.J. Jul. 18, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) . . . . . . . 8

*FTC v. Direct Mktg. Concepts, Inc.*, 648 F. Supp. 2d 202, 213
    (D. Mass. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*FTC v. Febre*, 128 F.3d 530, 537 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . 25, 26

*FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993) . . . . . . . . . . . . . 4

*FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 502, 526 (S.D.N.Y. 2000) . . . . 3, 20

*FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996) . . . . . . . . . . 19, 20

*FTC v. Gill,* 265 F.3d 944, 957-58 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . 22

*FTC v. J.K. Publ'ns*, 99 F. Supp. 2d 1176, 1201 (C.D. Cal. 2000) . . . 10, 11, 18

*FTC v. Loanpointe, LLC*, 2011 WL 4348304, *5 (D. Utah Sept. 16, 2011)
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 23

*FTC v. Magui Publishers, Inc.*, 1991 U.S. Dist. LEXIS 20452, at *49
    (C.D. Cal. Mar. 15, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*FTC v. Navestad* 09-CV-6329T (W.D.N.Y. March 23, 2012) . . . . . . . . . . . . 25

*FTC v. Neovi, Inc.,* 604 F. 3d 1150 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . 10

*FTC v. Neovi, Inc.,* 2009 U.S. Dist. LEXIS 649, at *29-30
   (S.D. Cal. Jan. 7, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*FTC v. Pantron I Corp.,* 33 F.3d 1088, 1095 (9th Cir. 1994) . . . . . . . . . . . 3, 18

*FTC v. Sec. Rare Coin and Bullion Corp.,* 931 F.2d 1312, 1316 (8th Cir. 1991)
   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 17, 21, 25

*FTC v. SlimAmerica,* 77 F. Supp. 2d 1263, 1272 (S.D. Fla. 1999) . . . . . . . 3, 24

*FTC v. Think Achievement Corp.,* 144 F. Supp. 2d 993, 1011 (N.D. Ind. 2000)
   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22, 23, 24

*FTC v. US Sales Corp.,* 785 F. Supp. 737, 753-54 (N.D. Ill. 1992) . . . . . . . . 24

*FTC v. Wilcox,* 926 F. Supp. 1091, 1098 (S.D. Fla. 1995) . . . . . . . . . . . . . . 3

*FTC v. Windward Mktg.,* 1997 Lexis 171114, at *32, *45
   (N.D. Ga. Sept. 30, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 26

*FTC v. World Travel Vacation Brokers,* 861 F.2d 1020, 1029 (7th Cir. 1988) . 3

*Hornell Brewing Co. v. Rosebud Sioux Tribal Court,* 133 F.3d 1087, 1091
   (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Cliffdale Assocs., Inc.,* 103 F.T.C. 110, 165 (1984) . . . . . . . . . . . . . 8, 9

*In re Int'l Harvester,* 104 F.T.C. 949, 1064 (1984) . . . . . . . . . . . . . . . . 10, 14

*In re Novartis Corp.,* 127 F.T.C. 580, 683 (1999) . . . . . . . . . . . . . . . . . . . 3

*In re Telebrands Corp.,* 140 F.T.C. 278, 304 (2005) . . . . . . . . . . . . . . . . . . 3

*In re Thompson Med. Co.,* 104 F.T.C. 648, 788-89 (1984) . . . . . . . . . . . . 3, 6

*Kraft, Inc. v. FTC,* 970 F.2d 311, 314 (7th Cir. 1992) . . . . . . . . . . . . . . . 3, 9

*Litton Indus., Inc. v. FTC,* 676 F.2d 364, 370 (9th Cir. 1982) . . . . . . . . . . . 23

*Novartis Corp. v. FTC*, 223 F.3d 783, 786-87 (D.C. Cir. 2000) . . . . . . . . . . .  9

*Orkin Exterminating Co., Inc. v. FTC*, 849 F.2d 1354, 1364-65
    (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Plains Commerce Bank v. Long Family Land and Cattle Co.*, 554 U.S. 316, 324
    (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985) . . . . . . . . . . . . . . . . . . . . 26

*SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1231-32 (D.C. Cir. 1989) . . 26

*SEC v. JT Wallenbrock & Assoc.*, 440 F.3d 1109, 1114-15 (9th Cir. 2006) . . . 26

*SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . 21

*Southwest Sunsites v. FTC*, 785 F.2d 1431, 1435 (9th Cir.1986) . . . . . . . . . .  3

*Standard Educators, Inc. v. FTC*, 475 F.2d 401, 403 (D.C. Cir.), *cert. denied*,
    414 U.S. 828 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*U.S. v. ACB Sales*, 590 F. Supp. 561, 570-5711 (D. Ariz. 1984) . . . . . . . . . .  7

*U.S. v. Prochnow*, 2007 U.S. App. LEXIS 24718, *16 (11th Cir. 2007) . . . . . . 25

*U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) . . . . . . . . . . . . . . . . . . . . 21

*White v. Goodman*, 200 F.3d 1016, 1018 (7th Cir. 2000) . . . . . . . . . . . . . . . .  7

## RULES

16 C.F.R. § 1.98 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

16 C.F.R. § 444.2(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

## STATUTES

15 U.S.C. § 1692i . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15 U.S.C. § 45(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

15 U.S.C. § 45(m)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20

15 U.S.C. § 45(n) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15 U.S.C. § 5(m)(2)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

15 U.S.C. § 53(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21

15 U.S.C. § 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

15 U.S.C. § 57(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1337(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1345 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1355 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2461 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## OTHER AUTHORITIES

U.S. CONST. art. I § 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

## I.     Introduction

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, Plaintiff Federal Trade Commission ("FTC") respectfully moves the Court for summary judgment on Counts One and Three through Seven of our complaint and a permanent injunction order.[1]  The uncontroverted facts surrounding Defendants' payday lending network establish that Defendants' lending activities and collection activities have violated the FTC Act, the Credit Practices Rule, and the Electronic Funds Transfer Act ("EFTA") and Regulation E ("Reg E") as a matter of law, causing consumers millions of dollars of harm. The proposed permanent injunction includes four types of relief:  bans on engaging in certain conduct, such as spoofing Federal Government garnishment paperwork, claiming Defendants can garnish wages without a court order, and violating the Credit Practices Rule and the Electronic Funds Transfer Act; an injunction against conduct that violates federal debt collection laws; monetary relief of a civil penalty and disgorgement order; and provisions that enable the FTC to monitor Defendants' compliance with the final order.

---

[1]We file this Memorandum with a Motion for Summary Judgment, Statement of Material Facts (cited here as "MF [#]"), Supplemental Declaration of Victoria M.L. Budich, Exhibits in Support of Summary Judgment, and Proposed Order ("Proposed Order").

1

## II.   This Court Should Grant Summary Judgment In Favor Of Plaintiff

As outlined below and detailed in Plaintiff's Statement of Material Facts, there is no genuine issue as to any material fact and the FTC is therefore entitled to judgment as a matter of law.

### A.   Standard For Summary Judgment

Summary judgment is appropriate where the admissible evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is "genuine" if a rational trier of fact could find in favor of the nonmoving party on the evidence presented.  *Id.*   The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact.  *Id.* at 248-52.

### B.   This Court Has Jurisdiction

This Court has personal jurisdiction over all defendants and subject matter jurisdiction to decide all of the Complaint violations in this case. 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and 15 U.S.C. §§ 45(m)(1)(A), 45(a), 53(b), 56(a) and 57b.  *See* Answer ¶¶ 2, 3 (admitting subject matter jurisdiction).  Defendants have affected the passage of property or messages

2

from one state to another through their nationwide unlawful lending and collection activities.  Transactions "which result[s] in the passage of property, persons or messages from within one state to within another state" are in or affecting commerce, as required by the FTC Act.  *Ford Motor Co. v. FTC*, 120 F.2d 175, 183 (6th Cir.), *cert. denied*, 314 U.S. 668 (1941).  (MF 23, 24.)  Thus, this Court has proper authority to resolve the FTC's allegations that Defendants have engaged in deceptive and unfair practices violating the FTC Act, the Credit Practices Rule, EFTA and Reg E (Counts I, and III-VII).

### C.    The Uncontroverted Facts Show That Defendants Have Engaged in Deception and Unfair Acts, Violating the FTC Act

The FTC has provided uncontroverted evidence through declarations and exhibits that Defendants engaged in deceptive and unfair acts that violate Section 5 of the FTC Act.

### 1.    Defendants Have Engaged In Deceptive Conduct

An act or practice is deceptive under Section 5(a) if it involves a material representation or omission that is likely to mislead consumers, acting reasonably under the circumstances, to their detriment.  *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994); *Kraft, Inc. v. FTC*, 970 F.2d 311, 314 (7th Cir. 1992), *cert. denied* 507 U.S. 909 (1993); *Southwest Sunsites v. FTC*, 785 F.2d 1431, 1435 (9th Cir.1986).  Express and deliberate claims are presumed

3

material.[2]  *FTC v. SlimAmerica,* 77 F. Supp. 2d 1263, 1272 (S.D. Fla. 1999);

*FTC v. Wilcox*, 926 F. Supp. 1091, 1098 (S.D. Fla. 1995); *In re Thompson Med.*

*Co.*, 104 F.T.C. 648, 788-89 (1984), *aff'd*, 791 F.2d 189 (D.C. Cir. 1986), *cert.*

*denied,* 479 U.S. 1086 (1987).

The FTC need not prove that each consumer relied on Defendants'

deceptive claims to establish a violation of Section 5 of the FTC Act.  *FTC v.*

*Security Rare Coin and Bullion Corp.,* 931 F.2d 1312, 1316 (8th Cir. 1991).

Rather, "the FTC need merely show that the misrepresentations or omissions

were of a kind usually relied upon by reasonable and prudent persons," that

they were widely disseminated, and that injured consumers actually purchased

the defendant's product.  *Id.*  "Requiring proof of subjective reliance by each

individual consumer would thwart effective prosecutions of large consumer

redress actions and frustrate the statutory goals of [Section 13(b)]."  *FTC v.*

*Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993), *cert. denied*, 510 U.S. 1110

(1994) (citations omitted).  In other words, the presumption arises when a

defendant's representations induce some action on the part of the consumer –

---

[2] The FTC need not prove that Defendants' misrepresentations were made
with an intent to defraud or deceive consumers or were made in bad faith.  *See,*
*e.g.*, *FTC v. World Travel Vacation Brokers*, 861 F.2d 1020, 1029 (7th Cir.
1988); *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1495 (1st Cir. 1989); *FTC*
*v. Five-Star Auto Club*, 97 F. Supp. 2d 502, 526 (S.D.N.Y. 2000).  A showing of
intent, however, "is powerful evidence that the alleged claim in fact was
conveyed to consumers."  *See, e.g.*, *In re Telebrands Corp.*, 140 F.T.C. 278, 304
(2005); *In re Novartis Corp.*, 127 F.T.C. 580, 683 (1999).

a purchase of goods or services or, as here, the garnishment of a consumer's wages.

### a.   Defendants Have Misrepresented to Consumers' Employers That Defendants Were Legally Authorized to Garnish the Pay of Consumers Without First Obtaining a Court Order (Count I)

Defendants made explicitly false claims to consumers' employers that they were authorized to garnish consumers' pay without court orders. Defendants do not dispute they have sent garnishment request letters to consumers' employers that stated expressly that "the Indian Commerce Clause of the United States Constitution and the laws of the Cheyenne River Sioux Tribe permit agencies to garnish the pay of individuals who owe such debt without first obtaining a court order." (MF 33, 37.)   In some instances, Defendants also have repeated to employers over the telephone that they were authorized to seek wage garnishments without court orders. *See, e.g.,* MF 42 (telephone script for garnishment conversations with consumers' employers). Defendants admit that they, in fact, garnished almost $1.5 million in wages in this manner from consumers' employers without court orders.  (MF 47.)

Defendants' statements that they could garnish wages without court orders pursuant to the U.S. Constitution and tribal law were utterly false. There is no reading of the U.S. Constitution's Indian Commerce Clause to support Defendants' claim that it authorizes wage garnishment without court order.  The Indian Commerce Clause simply grants Congress the authority to

5

"regulate Commerce . . . with the Indian tribes."  U.S. CONST. art. I § 8.
Moreover, Defendants are unable to point to a single law of the Cheyenne River
Sioux Tribe authorizing wage garnishment without court order.  (MF 38.)

Defendants' statements to consumers' employers, as opposed to
consumers directly, clearly satisfy the test for likeliness to mislead.  In a very
similar matter before the District of Utah, involving garnishment
misrepresentations made to consumers' employers, the Court specifically
considered whether "sending misleading information to the consumers'
employers qualifies as a deceptive act for purposes of the FTC Act."   The
Court's decision explains that "employers could be, and likely were, misled by
[a cover letter] into believing that Defendants had the right to garnish," and
that the "consumers' employers would not be in a position to know whether
that was factually correct."  The Court held that the garnishment statements to
employers that were not made directly to consumers qualified as deceptive
under the FTC Act because "Defendants' conduct was likely to mislead an
individual or an entity in a way that affects commerce."  *FTC v. Loanpointe,*
*LLC*, 2011 WL 4348304, *5 (D. Utah Sept. 16, 2011) (unpublished).

Defendants' deceptive statements to consumers' employers were also
clearly material.  In addition to being express claims that are presumptively
material, the purpose of the claims was to make employers more likely to
garnish wages.  *Id.*; *Thompson Med.*, 104 F.T.C. at 788 (1984); *see also*

6

Defendants' script for handling calls from employers who were reluctant to garnish.[3] (MF 42.) Accordingly, by causing consumers' employers to garnish wages via those false statements, the uncontroverted evidence demonstrates that Defendants violated Section 5 of the FTC Act as alleged in Count I of the Complaint.

> **b.    Defendants Have Deceptively Made Misrepresentations to Consumers that Defendants Can Sue Consumers in the Cheyenne River Sioux Tribal Court and Can Thereby Obtain a Valid Order to Garnish Consumers' Wages (Count VII)**

Defendants have misrepresented in their loan contracts that they could sue consumers in tribal court and thereby obtain valid orders to garnish consumers' wages. Such false claims likely would induce consumers to abandon any defenses they would otherwise be able to assert. In the debt collection context, courts have found that affirmatively misleading consumers about their legal rights is deceptive conduct that may prevent consumers from asserting actual defenses. *Cf.*, *White v. Goodman*, 200 F.3d 1016, 1018 (7th Cir. 2000); *United States v. ACB Sales*, 590 F. Supp. 561, 570-5711 (D. Ariz. 1984).

Among other things, Defendants state that the loan contract is "subject

---

[3] *See, e.g.*, Plaintiff's Exhibits In Support of Summary Judgment, Exhibit PX09, Garber Deposition Exhibit 6, pp. PAYDAY012669: "Aren't Payday Loans Illegal?"… "Mr./Mrs. __ ____ have [sic] signed a contract with us agreeing to be governed solely by the laws of the Cheyenne River Sioux Tribal Nation, and our rights stipulated under the 'Indian Commerce Clause, located in the United States Constitution, set forth by the United States Congress.'"

solely to the exclusive laws and jurisdiction" of the tribe, that the borrower "consent[s] to the sole subject matter and personal jurisdiction" of the tribal court, and that "the sole jurisdiction of the Cheyenne River Sioux Tribal Court" shall apply to the "potential preauthorized garnishment of wages." (MF 28.) These statements represent to consumers that, in the event of nonpayment, Defendants will sue consumers in tribal court, that the tribal court can legitimately consider such suits, and that Defendants will obtain valid judgments and relief in that court.

This representation is false because the tribal court does not have subject-matter jurisdiction over Defendants' claims against nonmembers. Tribal courts are of only limited subject matter jurisdiction, and cannot exercise authority over off-reservation activities involving non-members of the tribe. *See Hornell Brewing Co. v. Rosebud Sioux Tribal Court*, 133 F.3d 1087, 1091 (8th Cir. 1998) (a tribal court may not "exercise civil jurisdiction over the activities or conduct of non-Indians occurring *outside their reservations*") (emphasis in original); *see also Plains Commerce Bank v. Long Family Land and Cattle Co.*, 554 U.S. 316, 324 (2008) ("If the tribal court is found to lack such jurisdiction, any judgment as to the nonmember is necessarily null and void.").[4] Therefore, Defendants cannot obtain any valid wage garnishment

---

[4]Although Defendants have asserted that tribal court has the authority to decide their collection lawsuits, there is no dispute regarding the facts underlying this practice.  *See* Dkt. ##52-63, Defendants' Motion for Partial

8

order in tribal court.  *See* Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment. (Dkt. # 58.)

The representation that Defendants can sue the consumer in tribal court and obtain wage garnishment is material and likely to affect a consumer's conduct.  A misleading representation is material if it involves information that is important to consumers and thus likely to affect their conduct.  *See FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (*citing In re Cliffdale Assocs., Inc.,* 103 F.T.C. 110, 165 (1984)).  "Material information may affect conduct other than the decision to purchase the product."  *Cliffdale Assocs.,* 103 F.T.C. at 174, n.45.

The representations in the loan contract regarding the tribal court will likely affect her conduct when she is sued or threatened with suit.[5]  A consumer who is sued in tribal court is likely to expend time, money, and effort to defend the case in tribal court (probably at greater cost than the amount in

_____

Summary Judgement, and filings in opposition thereto.

[5]In addition, materiality is presumed for implied representations that a defendant intended to convey.  *See Novartis Corp. v. FTC*, 223 F.3d 783, 786-87 (D.C. Cir. 2000); *Kraft, Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992), *cert. denied*, 507 U.S. 909 (1993).  Here, Defendants' contract language and actions evince their intent to confuse consumers into believing that consumers can be sued in tribal court and that their wages can thereby be garnished.  *See FTC v. Bronson Partners, LLC*, 564 F. Supp. 2d 119, 135-36 (D. Conn. 2008) ("the statements in the advertisement were so unambiguous and repetitive that they were clearly intended by the advertiser to make the alleged claims, and as such, can be presumed material").

dispute), all based on the false representation in the loan contract that the tribal court has authority to enter a judgment and wage garnishment order against her.  Alternatively, a consumer in that position may be pressured into settling with Defendants and thereby abandoning any defenses she might have raised in a more familiar and convenient court with competent jurisdiction.

## 2.   Defendants Engaged in Unfair Conduct

Defendants' practices of contacting employers about debts and suing consumers in a court that lacks jurisdiction are unfair practices that violate the FTC Act.  An act or practice is unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n).  *See also FTC v. Accusearch, Inc.*, 570 F.3d 1187, 1193 (10th Cir. 2009)   The FTC meets the first prong (substantial injury) by establishing, among other things, that consumers were injured by a practice for which they did not bargain.  *Orkin Exterminating Co., Inc. v. FTC*, 849 F.2d 1354, 1364-65 (11th Cir. 1988).  Injury may be sufficiently substantial if it causes a small harm to a large class of people, *FTC v. J.K. Publ'ns*, 99 F. Supp. 2d 1176, 1201 (C.D. Cal. 2000), or severe harm to a limited number of people.  *In re Int'l Harvester*, 104 F.T.C. 949, 1064 (1984).[6]

_____

[6] *See also* FTC Unfairness Policy Statement, Letter from the Federal Trade Commission to Hon. Wendell Ford and Hon. John Danforth, Senate Committee on Commerce, Science, and Transportation (Dec. 17, 1980), appended to *Int'l*

Injury may include non-monetary or indirect monetary harm. *FTC v. Neovi, Inc.,* 604 F. 3d 1150 (9th Cir. 2010) (Defendants harmed consumers by creating a software program that allowed others to write fraudulent checks); *Accusearch, Inc.,* 570 F.3d at 1193 (substantial injury element met by subversion of consumer privacy.)

Under Section 5, an injury can be "reasonably avoidable" only if consumers "have reason to anticipate the impending harm and the means to avoid it." *Orkin,* 849 F. 2d at 1365-66. "The focus is on 'whether consumers had a free and informed choice that would have enabled them to avoid the unfair practice'." *J.K. Publ'ns,* 99 F. Supp. 2d at 1201.; *Orkin,* 849 F. 2d at 1365.

The third prong in the unfairness test is met "when a practice produces clear adverse consequences for consumers that are not accompanied by an increase in services or benefits to consumers or by benefits to competition." *J.K. Publ'ns,* 99 F. Supp. 2d at 1201; *see also, FTC v. Windward Mktg.,* 1997 Lexis 171114, at *32 (N.D. Ga. Sept. 30, 1997) ("[W]hen a practice produces clear adverse consequences for consumers that are not accompanied by an increase in services or benefits to consumers or by benefits to competition, the unfairness of the practice is not outweighed.").

---

*Harvester,* 104 F.T.C. at 1070.

### a.    Defendants Have Unfairly Communicated with Consumers' Employers and Co-workers without Consumers' Knowledge or Consent, Disclosing the Existence and Sometimes the Amount of Consumers' Purported Debt to Employers and Co-workers (Count III)

Defendants have communicated with consumers' employers and co-workers without consumers' knowledge or consent, an unfair act or practice in violation of Section 5 of the FTC Act.  Defendants' core collection practice was to send garnishment packets to consumers' employers if they were unable to reach or collect payment from consumers.  (MF 33.)  In some cases, Defendants have sent additional written correspondence and had telephone conversations with consumers' employers.  (MF 42, 43.)  This practice has caused substantial economic harm to consumers and their employers.  *See Loanpointe*, at \*6*, citing Am. Fin. Servs. Assoc.v. FTC*, 767 F.2d 957, 974 (D.C. Cir. 1985), *cert. denied*, 475 U.S. 1011 (1986) ("wage assignments [are] particularly harmful to consumers because they can be invoked without the due process safeguards of a hearing and an opportunity to present defenses.")  Specifically, consumers' and co-workers' work was interrupted to deal with Defendants' purported wage garnishment orders and other unsolicited communications, and consumers risked losing their jobs because of the interference caused by Defendants' activities.  (MF 48.)  Consumers also suffered harm in the form of embarrassment caused by the unauthorized disclosure of their debts, especially those arising from expensive, short-term credit, to employers and co-

12

workers.  (MF 48.)  Some consumers did not even realize that Defendants were contacting their employers and coworkers and, in any event, could not have reasonably avoided these harms or, as noted in American Financial Services, prevented the denial of their due process. (MF 44.) *Am. Fin. Servs. Assoc.,* 767 F.2d at 974.   Further, there are no countervailing benefits to consumers or to competition as a result of Defendants' unlawful wage garnishment tactics and deprivation of consumers' due process.  Accordingly, Defendants' practice is unfair and in violation of Section 5 of the FTC Act, as alleged in Count III of the Complaint.

### b.      Defendants Have Unfairly Sued Consumers In a Distant Court That Lacks Jurisdiction (Count VI)

Defendants admit that another of their collection strategies has been to sue consumers in the tribal court of the Cheyenne River Sioux Tribe.  (MF 45.) In fact, as discussed above regarding Count VII and in previous court filings, the tribal court does not have legal authority to decide collections matters regarding the consumers relevant to this case.  Defendants admit that their payday lending operation is exclusively on-line and by telephone, and that consumers do not physically set foot on the reservation at any point in the process of obtaining or repaying their payday loans.  (MF 27.)  Defendants have offered loans to consumers in almost every state through online, radio, and television advertisements.  (MF 24.)  Consumers sign up for Defendants' loans online.  (MF 27).  Defendants have sued 1,123 of these consumers in tribal

13

court, even though the suits lacked subject matter jurisdiction and were, therefore, frivolous.  (MF 45.)  This is an unfair practice in violation of the FTC Act.[7]

Defendants' subjection of consumers to lawsuits in tribal court has caused and is likely to cause substantial injury to consumers.  The tribal court is necessarily a distant one for these consumers.  Defendants admit that they do not offer loans to residents of the Cheyenne River Sioux tribal reservation or residents of South Dakota.  (MF 24.)  In addition to being geographically distant, consumers have limited, if any, access to the trial court's substantive or procedural laws, which are not readily accessible to consumers nationwide.  Defendants' practice involves obvious travel expense for a vulnerable class of consumers who are unlikely to have the means to appear and defend themselves.

Consumers could not reasonably avoid being sued in tribal court.  Defendants have relied upon a boilerplate contract provision to sue consumers in tribal court which consumers are powerless to modify and still obtain a loan, assuming they notice or read the provision before submitting their loan

---

[7]Congress determined, to curb the use of distant forums by debt collectors covered under the Fair Debt Collections Practices Act ("FDCPA"), that the only proper forum to sue is the judicial district in which the consumer signs the contract or in which the consumer resides. 15 U.S.C. § 1692i. Although we do not allege Defendants are covered by the FDCPA, Congress' logic applies in this case.

applications.  (MF 28.)  Moreover, consumers have received the choice-of-forum language late in the loan process, after they have submitted an application. (MF 27.)   Further, the wording of which laws apply is unclear and confusing. (MF 28.)  Thus, consumers do not have a reasonable opportunity to avoid a harm they are unlikely to understand exists at the time they apply for a loan.[8]

Defendants' practices do not benefit consumers or competition.  Neither consumers nor competition benefit from Defendants filing frivolous lawsuits. First, there are no legitimate benefits to suing consumers in a court that lacks jurisdiction.  Second, the cost of traveling to South Dakota to defend the lawsuit and hiring tribal court counsel often far exceeds the amount in dispute.  Accordingly, Defendants' practice is unfair and in violation of Section 5 of the FTC Act, as alleged in Count VI of the Complaint.

### D.    The Uncontroverted Facts Show Defendants Have Violated the Credit Practices Rule (Count IV)

Defendants have violated the Credit Practices Rule by using harmful and oppressive wage assignment clauses in their loan contracts.  A wage assignment clause purports to give the lender the right to garnish wages from a consumer's employer, in the event of a default.  In 1984, the FTC promulgated the Credit Practices Rule, 16 C.F.R. Part 444, to address certain unfair creditor

---

[8] *See In re Int'l Harvester Co.*, 104 F.T.C. at 1061 ("whether some consequence is 'reasonably avoidable' depends not just on whether they know the physical steps to take in order to prevent it, but also whether they understand the necessity of actually taking those steps.").

collection remedies, including wage assignment clauses. *Am. Fin. Servs. Ass'n*, 767 F. 2d at 962-63. In promulgating the Credit Practices Rule, the FTC determined that wage assignments, unlike garnishment orders, occur without the procedural safeguards of a court hearing and an opportunity for debtors to assert defenses or counterclaims. The use of wage assignments interferes with employment relationships and disrupts family finances. Wage assignments were found to be particularly harmful because they cause injury to consumers who may have valid reasons for nonpayment. *Id.* at 974-75.

Section 444.2(a)(3) of the Credit Practices Rule generally prohibits lenders from including wage assignment clauses in their credit contracts. Such clauses can be included only if the assignment: (i) is, by its terms, revocable at the will of the debtor; (ii) is a payroll deduction plan or preauthorized payment plan, commencing at the time of the transaction, in which the consumer authorizes a series of wage deductions as a method of making each payment; or (iii) applies only to wages or other earnings already earned at the time of the assignment. 16 C.F.R. § 444.2(a)(3). The boilerplate wage assignment clause contained in Defendants' loan documents, that consumers were required to sign in order to obtain a loan, meets none of these requirements. (MF 28, 29.) A portion of Defendants' wage assignment clauses, used by Defendants from at least October 10, 2009 until June 7, 2010, included language purporting to allow consumers to opt out of this clause if

16

they did so within 10 days of the contract date, in writing.  (MF 29.)  That language is flatly insufficient to insulate Defendants from a Credit Practices Rule violation.  The Credit Practices Rule requires a wage assignment clause to be revocable at will "by its terms."  A review of Defendants' clause clearly demonstrates that "by its terms," requiring a revocation *within 10 days* of the contract is not "revocable at the will of the debtor."  Accordingly, Defendants have violated Section 444.2(a)(3) of the Credit Practices Rule, 16 C.F.R. § 444.2(a)(3), as alleged in Count IV of the Complaint.

### E.    The Uncontroverted Facts Show Defendants Have Violated EFTA and Reg E (Count V)

Defendants' loan documents have also clearly violated federal law by requiring preauthorized electronic transfers.  Under EFTA regulations, "[n]o ... person may condition an extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers."  12 C.F.R § 205.10(e).  Defendants have included a mandatory preauthorized electronic fund transfer provision in all their loan contracts in all of their loan contracts, prior to the commencement of this case, stating, for example:

> Any payment due on the Note shall be made by us effecting one or more ACH debit entries to your Account at the Bank.  You authorize us to effect this payment by these ACH debit entries.  The ACH/EFT Authorizations set forth in this Loan Agreement are to remain in full force and effect for this transaction until your indebtedness to us for the total of payments, plus any late or NSF fee incurred, is fully satisfied.

(MF 31.)

17

Defendants' conduct is covered by EFTA.  Defendants, who include a natural person (Webb) and corporations (Corporate Defendants), are "persons" within the meaning of EFTA regulations.  *Id.* at § 205.2(j) (defining "persons" as a natural person or an organization, including a corporation).  Under those regulations, "credit" is defined as the right "to incur debt and defer its payment." *Id.* at § 205.2(f) (definitions applicable to Regulation E).  Here, Defendants extend "credit" to consumers by offering payday loans that permit consumers to "defer" payment of the balance.  Further, the regulations define "preauthorized electronic transfers" as "electronic fund transfer[s] authorized in advance to recur at substantially regular intervals." *Id.* at § 205.2(k). Defendants' offer of credit has been conditioned on mandatory "preauthorized electronic transfers" because their financing contracts require consumers to agree to weekly or bi-weekly electronic debit entries from consumers' bank accounts.  (MF 31.)  Thus, Defendants' financing contracts extend credit conditioned on mandatory preauthorized transfers in plain violation of EFTA.

### F. The Corporate Defendants Are Liable for Injunctive Relief and Equitable Monetary Relief

In an action filed pursuant to Section 13(b) of the FTC Act, if the Court finds that a corporate defendant violated any provision of law the FTC enforces, the Court has the authority to exercise its full panoply of equitable powers against it, including issuing permanent injunctive relief and ordering monetary relief, such as restitution and disgorgement of unjust enrichment. *Sec. Rare*

18

*Coin & Bullion,* at 1314-15; *Pantron I,* 33 F.3d at 1102.  As demonstrated above, it is uncontroverted that the Corporate Defendants have committed numerous violations of Section 5 of the FTC Act, the Credit Practices Rule, and EFTA and Reg E.

"When one or more corporate entities operate as a common enterprise, each may be held liable for the deceptive acts and practices of the others." *FTC v. Think Achievement Corp.,* 144 F. Supp. 2d 993, 1011 (N.D. Ind. 2000), *aff'd* 312 F.3d 259 (7th Cir. 2002).  Courts have found a common enterprise where companies share common control, office space, employees, interrelated funds, and other factors.  *J.K. Publ'ns, Inc.,* 99 F. Supp. 2d at 1202.  Where the same individuals transact business through a "maze of interrelated companies," the whole enterprise may be held liable as a joint enterprise.  *See id.* (quoting *Delaware Watch Co. v. FTC,* 332 F.2d 745, 746 (2d Cir. 1964)).

Defendants have operated as a common enterprise in the payday lending and debt collection business.  They operate from two business locations at 602 and 612 E Street in Timber Lake, South Dakota.  (MF 9, 10.)  They share common control by Defendant Webb, who stated that he is the 100% owner of all Corporate Defendants.  (MF 5.)  Those Defendants that had garnishment departments, Payday Financial/Lakota Cash and Financial Solutions, shared employee training manuals and procedures.  (MF 35.)  In short, Corporate Defendants shared ownership, control, office space, and addresses, making the

19

entire operation a common enterprise. Accordingly, the Corporate Defendants are liable for injunctive relief and, jointly and severally, for monetary relief.

### G.   Defendant Webb Is Liable for Injunctive and Monetary Relief

In addition to Corporate Defendants, Individual Defendant Webb is liable for injunctive and monetary relief for law violations committed by the Corporate Defendants. To obtain an injunction against an individual, the FTC must show that the individual either had the authority to control the unlawful activities or participated directly in them. *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1205 (10th Cir. 2005) ("Once the FTC presented evidence defendants violated § 5, it only had to show [the individual] had the authority to control [corporate] defendants to establish its case for injunctive relief against him"); *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996); *FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 573 (7th Cir. 1989). In general, an individual's status as a corporate officer gives rise to a presumption of liability to control a small, closely held corporation. *Standard Educators, Inc. v. FTC*, 475 F.2d 401, 403 (D.C. Cir.), *cert. denied*, 414 U.S. 828 (1973). More particularly, assuming the duties of a corporate officer is probative of an individual's participation or authority. *Amy Travel*, 875 F.2d at 573; *Five-Star Auto Club*, 97 F. Supp. 2d at 538.

An individual may be held liable for monetary relief for corporate practices if the individual had actual knowledge of material misrepresentations,

reckless indifference to the truth or falsity of such representations, or an awareness of a high probability of fraud coupled with the intentional avoidance of the truth. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1231 (9th Cir. 1999); *Gem Merch. Corp.,* 87 F.3d at 470; *Amy Travel*, 875 F.2d at 573. Participation in corporate affairs is probative of knowledge. *Affordable Media*, 179 F.3d at 1235.

In addition, the FTC seeks a civil penalty for Defendants' violation of the Credit Practices Rule (Count Four). For civil penalty liability under Section 5(m) of the FTC Act, Defendant's violation of the Credit Practices Rule must be "knowing." 15 U.S.C. § 45(m). Here, the uncontroverted evidence demonstrates that Webb had and has the authority to control Corporate Defendants' activities and did, in fact, participate in their activities. (MF 4-8, 29, 31, 40.) The evidence also shows that Webb had specific knowledge of the companies' wrongful acts at issue in this case, including the use of the unlawful wage assignment clause in the Defendants' loan contracts. (MF 29.) Accordingly, he is liable for injunctive relief, as well as monetary relief including disgorgement and civil penalties.

### III. The Relief Sought in the Proposed Final Order is Appropriate

The scope of the proposed injunctive provisions and monetary relief provided in the proposed final order is appropriate in light of Defendants' past

21

conduct and the likelihood of recurrence absent such relief, and is consistent with orders entered in similar FTC cases.

### A.   The Injunctive Provisions Are Appropriate

Section 13(b) of the FTC Act expressly authorizes courts to grant a permanent injunction against violations of any provisions of law enforced by the FTC.  15 U.S.C. § 53(b); *Security Rare Coin* , 91 F.2d at 1315.

A permanent injunction is justified when there is a "cognizable danger of recurrent violation, or some reasonable likelihood of future violations," *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).  Prior illegal conduct is highly suggestive of the likelihood of future violations.  *SEC v. Murphy,* 626 F.2d 633, 655 (9th Cir. 1980).  Further, "a court's power to grant injunctive relief survives the discontinuance of the illegal conduct."  *W.T. Grant*, 345 U.S. at 633; *Accusearch*, 570 F.3d at 1201; *Freecom*, 401 F.3d at 1204.

A permanent injunction is clearly warranted here.  Defendants have displayed a cavalier disregard for the law in their lending and collection practices.  Their decision to ignore laws relating to credit practices (even though they operate as a lender and Webb himself has worked in the banking industry for approximately 31 years, (MF 1)) demonstrates a likelihood of future violations if not permanently enjoined.  The fact that every step of their payday loan operation involved law violations suggests a critical effort on the

22

part of defendants to circumvent consumers' collection rights.  Defendants' violations started with the use of loan contracts containing unlawful provisions.  Their attempts to spoof the garnishment paperwork available only to the federal government and correspondence and garnishment attempts with consumers' employers were unlawful.  Moreover, their practice of filing collections lawsuits against non-resident consumers in tribal court has violated the FTC Act.  Therefore, a nationwide injunction against Defendants is appropriate and necessary to protect the public from Defendants' further violations of the FTC Act, the Credit Practices Rule, and EFTA.

### 1.   Ban

Courts have the equitable authority under Section 13(b) to ban Defendants from otherwise lawful conduct.[9]  The proposed final order permanently bans Defendants from using wage assignment clauses or assisting others who do (Section I).[10]  A permanent ban is necessary and appropriate

---

[9]Courts have exercised their authority to issue permanent bans that covered and exceeded the specific conduct alleged in the complaints.  *See, e.g.,* *FTC v. Gill,* 265 F.3d 944, 957-58 (9th Cir. 2001) (court upholds ban on all credit repair and rejects contention that a lesser restriction would suffice.)*; FTC v. Check Investors,* 2005 U.S. Dist. LEXIS 37199, at *3 (D. N.J. Jul. 18, 2005) (unpublished), *aff'd,* 502 F.3d 159 (3d Cir. 2007) (court holds it appropriate to ban Defendants from all debt collection activities); *FTC v. Think Achievement Corp.,* 144 F. Supp. 2d 1013, 1024 (N.D. Ind. 2000), *aff'd,* 312 F.3d 259 (7th Cir. 2002) (the court issues ban on telemarketing).

[10]This relief was granted in a highly similar case involving unlawful wage assignment clauses in the District of Utah.  *FTC v. Loanpointe, LLC,* 2011 WL 4348304, *5 (D. Utah Sept. 16, 2011) (unpublished).

here to protect consumers in light of Defendants' demonstrated inability to use such clauses or file collections lawsuits legally.

### 2.    Further Prohibited Business Activities

The proposed injunctive provisions (Sections II-VI) would simply prohibit Defendants from engaging in practices that already are unlawful under Section 5 of the FTC Act, the Credit Practices Rule, and EFTA.  These injunctive provisions bear a reasonable relation to Defendants' unlawful practices, yet are framed broadly enough to prevent Defendants from engaging in similar illegal practices in the future.  *See FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 395 (1965) ("The Commission is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past.  Having been caught violating the [FTC] Act, respondents 'must expect some reasonable fencing in.'"); *Litton Indus., Inc. v. FTC*, 676 F.2d 364, 370 (9th Cir. 1982) (reasonable [f]encing-in provisions serve to 'close all roads to the prohibited goal, so that [the FTC's] order may not be by-passed with impunity'); *see also, Think Achievement Corp.*, 144 F. Supp. 2d at 1017 ("Reasonable fencing-in provisions are appropriate to prevent defendants from engaging in illegal practices."); FN 9 above (examples of courts exercising authority to issue bans that are broader than the specific violations alleged in the complaints.)

24

### 3.    Monitoring Provisions

The proposed order also contains various provisions obtained in other FTC actions to ensure enforceability of the order:  an order distribution requirement (VIII);  a provision requiring Defendants to notify the FTC of any changes in their employment or residence status (IX);  a provision requiring maintenance of records (X); and a provision permitting the FTC to monitor Defendants' compliance with the order through access to their business premises to inspect records and interview employees, or by posing as consumers to monitor representations, or through procedures prescribed by the Federal Rules of Civil Procedure (Section XI).

It is well settled that these types of monitoring provisions are proper to ensure compliance with the ban requirement and the other permanent injunctive provisions discussed above.  *See, e.g., FTC v. Direct Mktg. Concepts, Inc.*, 648 F. Supp. 2d 202, 213 (D. Mass. 2009) ("Courts have also included monitoring provisions in final orders in FTC cases to ensure compliance with permanent injunctions"); *Think Achievement*, 144 F. Supp. 2d at 1018 ("Courts may order record-keeping and monitoring to ensure compliance with a permanent injunction"); *SlimAmerica*, 77 F. Supp. 2d at 1276 (holding that record-keeping and monitoring provisions were appropriate to permit the FTC to police the defendants' compliance with the order); *FTC v. US Sales Corp.*, 785

F. Supp. 737, 753-54 (N.D. Ill. 1992) (indicating that monitoring by the FTC may be necessary to ensure adequate compliance).

### B.      The Monetary Relief Is Appropriate

The FTC seeks both disgorgement and a civil penalty to deprive Defendants of their ill-gotten gains and to deter misconduct through a civil penalty.[11]

### 1.      Disgorgement

Section VII(A) is a joint and several  judgment disgorging Defendants of their profits from their garnishment practices, in the amount of $417,740.

Section 13(b)'s grant of authority to provide injunctive relief carries with it the full range of equitable remedies, including the power to grant monetary relief. *Security Rare Coin,* 91 F.2d at 1315.  The FTC seeks an order requiring Defendants to disgorge their ill-gotten gains to prevent unjust enrichment from law violations and to deter future law violations.  Disgorgement is an important tool under Section 13(b) in enabling the FTC to enforce consumer protection laws.  *Gem Merch. Corp.,* 87 F.3d at 470*; FTC v. Febre*, 128 F.3d 530, 537 (7th Cir. 1997).

---

[11]The Eleventh Circuit has upheld  a final order with both disgorgement and civil penalties: "If an offender ...could avoid a civil penalty by pointing to the fact that he was going to be required to disgorge his profits, the deterrent effect of the civil penalty would be eviscerated." *United States v. Prochnow,* 2007 U.S. App. LEXIS 24718, *16 (11th Cir. 2007); *see also FTC v. Navestad* 09-CV-6329T (W. D.N.Y. March 23, 2012) (civil penalty and disgorgement for violation of the FTC Act and the Telemarketing Sales Rule).

To obtain disgorgement, the FTC must show that a defendant profited from violations of the FTC Act or other statutes or regulations; that the profits are causally related to the violations; and that the disgorgement figure reasonably approximates the amount of unjust enrichment. *FTC v. Magui Publishers, Inc.*, 1991 U.S. Dist. LEXIS 20452, at *49 (C.D. Cal. Mar. 15, 1991) (unpublished) (*citing SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1231-32 (D.C. Cir. 1989)). Disgorgement should include "all gains flowing from the illegal activities." *FTC v. Neovi, Inc.*, 2009 U.S. Dist. LEXIS 649, at *29-30 (S.D. Cal. Jan. 7, 2009) (unpublished) (*citing SEC v. JT Wallenbrock & Assoc.*, 440 F.3d 1109, 1114-15 (9th Cir. 2006)). Expenses are not deducted because to do so would be unjust. *Wallenbrock*, at 1114. Instead, total revenue is the appropriate measure of disgorgement.[12] *Neovi*, 2009 U.S. Dist. LEXIS 649 at *29-30. In calculating total revenue, the Court has "broad discretion," and needs only a "reasonable approximation." *Id.* The burden then shifts to Defendants "to show that those figures were inaccurate." *Febre*, at 535 (holding that "the risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty").

---

[12] Whether or not any consumer is entitled to redress is immaterial for, once a violation has been established, "the district court possesses the equitable power to grant disgorgement without inquiring whether, or to what extent, identifiable private parties have been damaged by. . . fraud." *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985).

As discussed, Defendants' revenues from their illegal payday lending and collections practices were $417,740, which does not include the principle of the loans. (MF 47.)  Defendants are jointly and severally liable for the disgorgement amount.  *Windward Mktg.*, 1997 U.S. Dist. LEXIS 17114 at *44 (holding individuals and corporations jointly and severally liable for violations of the FTC Act).  Thus, this Court should enter a judgment of $417,740 as disgorgement.

### 2.    Civil Penalty

Section VII(B) is a civil penalty judgment against Defendants in the amount of $3,800,000.  For violations occurring on or after February 10, 2009, the civil penalty amount is $16,000 per violation, or per day of a continuing violation, pursuant to the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 61 Fed. Reg. 54548 (Oct. 21, 1996); 74 Fed. Reg. 857 (Jan. 9, 2009).

Defendants used different versions of a wage assignment clause in their loan contracts until September 10, 2011.  (MF 29.)  From October 9, 2009 to June 6, 2010 (241 days), Defendants' contracts included a version of the clause that required consumers to revoke the wage assignment provision in writing, within 10 days of submitting their loan application.  (MF 29.)   Given the

28

violation period, the calculation of an appropriate civil penalty is as follows: 241 (days of continuing violation) times the statutory penalty of $16,000 equals $3,840,000. This calculation is less than the total amount for the entire period that Defendants used wage assignment clauses in their loan contracts. However, Section 5(m)(2)(c) requires this Court to take into account several factors in setting a civil penalty amount: "the degree of culpability, any history of prior conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require." 15 U.S.C. § 5(m)(2)(c). Because Defendants modified the wage assignment clause and used one that was less egregious starting June 7, 2010, Plaintiff submits this Court should consider this mitigating factor and base the civil penalty on the time period of October 9, 2009 to June 6, 2010, which supports the proposed civil penalty amount of $3,840,000.

Although we recommend limiting the time-frame of Defendants' civil penalty, the other factors justify a large civil penalty at the high end of the spectrum. Because every phase of Defendants' payday lending operation involved law violations and Webb's individual degrees of knowledge and control were extensive, a substantial civil penalty is warranted. Moreover, in considering the effect of the civil penalty on Defendants' ability to continue to do business, the Court should consider that the proposed civil penalty amount of $3,856,000 is only a fraction of the $23,083,000 that Defendants collected in

29

fees, interest, finance charges, and miscellaneous items from loans that included wage assignment clauses.  (MF 47.)  Therefore, we recommend that a civil penalty amount of  $3,856,000 would achieve sufficient deterrence, balancing Defendants' egregious, ongoing, knowing violations, take any mitigating factors into account, and allow Defendants to continue their business lawfully.

## IV.    Conclusion

For the reasons above, the FTC requests that the Court grant our motion for Summary Judgment as to Counts One and Three through Seven of the Amended Complaint (Dkt. # 44), and enter the Proposed Final Order.

Dated:      January 31, 2013              Respectfully submitted,

/s/ K. Michelle Grajales
LASHAWN M. JOHNSON
(admitted pro hac vice)
K. MICHELLE GRAJALES
(admitted pro hac vice)
NIKHIL SINGHVI
(admitted pro hac vice)
Federal Trade Commission
600 Pennsylvania Avenue, N.W., NJ-3158
Washington, DC  20580
(202) 326-3057 (Johnson);(202) 326-3172
        (Grajales);(202) 326-3480 (Singhvi)
(202) 326-3768 (facsimile)
Email: ljohnson@ftc.gov,
        mgrajales@ftc.gov, nsinghvi@ftc.gov

Dated:      January 31, 2013          BRENDAN V. JOHNSON
                                      United States Attorney

                                      /s/ Cheryl Schrempp DuPris
                                      CHERYL SCHREMPP DUPRIS
                                      Assistant United States Attorney
                                      P.O. Box 7240
                                      Pierre, SD 57501
                                      (605) 224-5402 (telephone)
                                      (605) 224-8305 (facsimile)
                                      Email: cheryl.dupris@usdoj.gov

                                      Attorneys for Plaintiff
                                      FEDERAL TRADE COMMISSION

## D.S.D. Civ. LR. 7.1.B(1) WORD COUNT COMPLIANCE CERTIFICATE

I, K. Michelle Grajales, certify that Plaintiff's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment as to Counts One and Three through Seven complies with the word count limitation in D.S.D. Civ. LR. 7.1.B(1) (specifying that a court filing shall not be longer than 12,000 words).  In preparation of this memorandum, I used Corel WordPerfect Version X3, and this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations in the following word count. I further certify that the above referenced memorandum contains 7,148 words.

Dated:      January 31, 2013          s/ K. Michelle Grajales
                                      K. Michelle Grajales
                                      Attorney for Plaintiff
                                      FEDERAL TRADE COMMISSION

**CERTIFICATE OF SERVICE**

I, Cheryl Schrempp DuPris, do hereby certify that on this 31st day of January, 2013, I caused copies of the foregoing Plaintiff's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment to be served upon the following, via electronic filing, to-wit:

Cheryl Bogue
Bogue & Bogue
[boguelaw@faithsd.com]

Claudia Callaway
John Black
Katten Muchin Rosenman LLP
[claudia.callaway@kattenlaw.com]
[john.black@kattenlaw.com]

_____/s/ Cheryl Schrempp DuPris_
Cheryl Schrempp DuPris

32