**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION**

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | * | |
| | * | |
| | * | Civil Case No. 11-3017 |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| PAYDAY FINANCIAL, LLC, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

Pursuant to Local Civil Rule 56.1(A), Plaintiff submits this statement of the following material facts, as to which no material issue exists, regarding Defendants' business network, their unlawful practices involving both lending and collections, and the harm caused by these practices.[1]

---

[1] We file the instant statement contemporaneously with Plaintiff's Motion for Summary Judgment as to Counts One and Three through Seven, Memorandum in support thereof, Supplemental Declaration of Victoria M. L.Budich, attaching Plaintiff's Exhibits In Support of Summary Judgment (PX01-PX11), and Proposed Final Judgment and Order. Citations in this document to PX01-07 refer to exhibits previously filed in support of Plaintiff's Motion for a Temporary Restraining Order (Dkt. ## 10, 11).

### I.  Defendants Operate A Payday Lending and Collection Network Under The Exclusive Control Of Defendant Martin Webb

Defendants have operated through a network of nine different corporations controlled by the Individual Defendant in this matter.

1.  Defendant Martin A. "Butch" Webb ("Webb") resides in South Dakota. Webb Deposition, PX08 4:10-11; Defendants' Answer to Plaintiff's Amended Complaint for Civil Penalties, Injunctive, and Other Equitable Relief (Dkt. # 51, "Answer") ¶ 7.  Separate from his activities described in the Complaint, Webb is employed by a bank and has approximately 31 years of experience in the banking industry.  Webb Deposition, PX08 4:20-21.

2.  Webb organized Defendant Payday Financial, LLC ("Payday Financial") on October 22, 2007, as its sole member and owner. Webb Deposition, PX08, Deposition Exhibit 3 (Articles of Organization for Payday Financial); *see also*, PX08 36:11-14.   Payday Financial, under Webb's control, organized each Corporate Defendant except for Financial Solutions, LLC ("Financial Solutions").  Webb Deposition, PX08 79:25-80:04 (stipulation that articles of organization are authentic copies); Budich Declaration, PX07, Att. A, p.18; Att. C, p. 36; Att. D, p. 46; Att. F, p. 64; Att. G, p. 74; Att. H, p. 84; Att. I, p. 93.  Payday Financial also served as the sole managing member of each Corporate Defendant,

except for Financial Solutions, LLC, until at least February 2011.[2]
Budich Declaration, PX07, Att. A, pp. 18, 22-23; Att. C, pp. 36, 40-41;
Att. D, pp. 46, 50-51; Att. F, pp. 64, 68-69; Att. G, pp. 74, 78-79; Att. H,
p. 84; Att. I, p. 93.

3. Webb filed Articles of Organization for Financial Solutions on February
10, 2010, with the South Dakota Secretary of State. Webb Deposition,
PX08, Deposition Exhibit 11. Financial Solutions ceased operations
when Plaintiff commenced this case and "was set up to purchase
basically bad debt." Webb Deposition, PX08 38:2-5. The bad debt
purchased by Financial Solutions included defaulted loans that were
offered by another Corporate Defendant, Great Sky Finance. Garber
Deposition, PX09 144:2-14.

4. As described in the following paragraphs, Webb solely controls each of
the Corporate Defendants.

5. Webb is the 100% owner of all Corporate Defendants in this matter.
Webb Deposition, PX08 36:12-14; *see also*, Garber Deposition, PX09
31:04-20 (testimony on organizational chart for Payday Financial/Lakota
Cash).

---

[2]In February 2011, Payday Financial dissociated from Great Sky,
Western Sky, Red Stone, Management Systems, and 24-7 Cash. Payday
Financial was the only managing member for these entities; however, the
entities continued to conduct business after the dissociations were filed.

6.     Webb created Corporate Defendants' business model, oversees the
payday lending operations, and supervises office activities of Corporate
Defendants.  Budich Declaration, PX07 Att. AC, p. 322 (In Webb's
published response to a news article written about Defendants, Webb
refers to "[m]y internet lending business model," "my company," "my
businesses," and his personal supervision of Defendants' employees and
involvement in borrowers' repayment negotiations.).

7.     Webb conducts extensive work on behalf of Corporate Defendants on a
daily basis, including: cost analysis; analysis of charge-off figures,
collections figures, and phone contacts; dealing with infrastructure,
buildings, Internet, telephones and Internet and Technology ("I.T.");
overseeing employees and supervisors; procedure; policy; underwriting;
default rates; advertising and advertising costs.  Webb Deposition, PX08
74:3-15.  He holds weekly staff meetings as well as management
meetings.  PX08 75:05-17.  He approves every bill that goes through his
businesses, reviews audits, and reviews daily reports from almost every
department.  PX08 76:12-23.

8.     Webb registered and paid  fees associated with the domain registration
and related services of Corporate Defendants.  Budich Declaration, PX07
¶¶ 16-17, Att. W, pp. 205-220; Att. X, pp. 222-299.

9.   All corporate defendants were formed in, and organized under the laws of

the State of South Dakota.  Answer ¶¶ 7-15: 7 (Payday Financial LLC

("Payday Financial")), 8 (Great Sky Finance, LLC ("Great Sky")), 9

(Western Sky Financial, LLC ("Western Sky"), 10 (Red Stone Financial,

LLC ("Red Stone")), 11 (Management Systems, LLC ("Management

Systems")), 12 (24-7 Cash Direct, LLC ("24-7")), 13 (Red River Ventures,

LLC ("Red River")), 14 (High Country Ventures, LLC ("High Country")), 15

(Financial Solutions, LLC ("Financial Solutions")); Webb Deposition, PX08

79:25-80:04 (stipulation that articles of organization are authentic

copies).  Defendants' Answer indicates they each operated from the same

business address of 612 E Street, Timber Lake, South Dakota.  Answer

¶¶ 7-15.

10.   Webb clarified in his deposition that Western Sky, Payday Financial, Red

Stone, Great Sky, and Management Systems had employees in a separate

structure from the 612 East Street property located at 602 East Street,

Timber Lake, South Dakota.  Webb Deposition, PX08 36:15-38:5.

11.   Corporate Defendants admit that they are not owned or chartered by the

Tribe and do not lend in any official Tribal capacity.  *See* Budich

Declaration, PX07, Att. O, p. 130 ("PayDay Financial, LLC, is owned

wholly by an individual Tribal Member of the Cheyenne River Sioux Tribe

and is not owned or operated by the Cheyenne River Sioux Tribe or any

of its political subdivisions."); *see also* Budich Declaration, PX07 Att. O, p. 130; Budich Declaration, PX07 Att. R, p. 156; Budich Declaration, PX07 Att. S, p. 167.  Webb is a member of the Cheyenne River Sioux Tribe, though he does not claim to be any type of Tribal official.[3]  Nor is Webb listed among the Tribal officials on the Tribe's website.[4]

12.   Payday Financial has advertised and offered payday loans to consumers through the Internet websites www.lakotacash.com, www.bigskycash.com, and www.paydayfinancialllc.com.  Answer ¶ 7; Budich Declaration, PX07, Att. O, pp. 130-137; Att Q, pp. 144-154; Att. P, pp. 139-142.  On its website, www.paydayfinancialllc.com, Payday Financial has stated that it offers payday loans through the companies Lakota Cash, Big Sky Cash, Great Sky Finance, Red Stone Financial, and Western Sky Financial.  Budich Declaration, PX07, Att. P, p. 139. Payday Financial handled collections and garnishments for loans that were delinquent or in default.  *See*, Garber Deposition, PX09 29:2-30:11, Deposition Exhibit 1 (Organizational Chart for "Payday Financial, LLC - Lakota Cash").

---

[3]In separate state-initiated proceedings, Webb has filed a Tribal certificate indicating his membership in the Tribe.  *See* Budich Declaration, PX07, Att. AB, p. 317.

[4]*See* http://www.sioux.org/index.php/main/inner/sioux/tribal_government.

13.   Payday Financial first offered loans to consumers on May 12, 2008.
      Excerpted Discovery Responses, PX11-A, p. 3.

14.   Great Sky has advertised and offered payday loans to consumers through
      the Internet website www.greatskycash.com.  Answer ¶ 8; Budich
      Declaration, PX07 ¶ 13, Att. T, pp. 176-183.

15.   Western Sky has advertised and offered payday loans to consumers
      through the Internet website www.westernsky.com.  Answer ¶ 9; Budich
      Declaration, PX07 ¶ 12, Att. S, pp. 167-174.

16.   Red Stone has advertised and offered payday loans to consumers
      through the Internet website www.redstonecash.com.  Answer  ¶10;
      Budich Declaration, PX07 ¶ 11, Att. R, pp. 156-165.

17.   Management Systems has advertised and offered payday loans to
      consumers through the Internet website
      www.managementsystemsllc.net.  Budich Declaration, PX07 ¶ 14, Att. U,
      pp. 185-193.

18.   24-7 Cash has advertised and offered payday loans to consumers
      through the Internet website www.24sevensolution.com.  Answer  ¶12;
      Budich Declaration, PX07 ¶ 15, Att. V, pp. 195-203.

19.   Red River has advertised and offered payday loans to consumers in
      March and April 2009.  Excerpted Discovery Responses, PX11-B, p. 3.

20.   High Country has advertised and offered payday loans to consumers in March and April 2009. Excerpted Discovery Responses, PX11-C, p. 3.

21.   Financial Solutions purchased loans that had been approved by other companies, including Great Sky, and collected payments from consumers for those loans.  Garber Deposition, PX09 142:20-143:1.

**II.   The uncontroverted facts establish that Defendants' business involved unlawful lending and unlawful collections.**

22.   Since at least May 12, 2008, Defendants have offered and advertised payday loans. Excepted Discovery Responses, PX11-A, p. 3.

23.   Through Internet websites and television ads, Defendants have offered consumers payday loans ranging from $300 to $2,525.  Budich Declaration, PX07, Att. R, p. 161; Att. S, p. 167.  Defendants also obtain customers from "leads that are obtained through the Internet." Webb Deposition, PX08 95:4-11.  Defendants have marketed both their radio and television advertisements nationwide through syndicated networks. Webb Deposition, PX08 95:12-17.  The loan amounts that are ultimately approved are often in the $300-$500 range.  *See, e.g.,* Cole Declaration, PX02 ¶ 6 (loan amount of $500); Edwards Declaration PX05 ¶ 2 (loan amount of $500), Hildebrand Declaration PX06 ¶ 5(loan amount of $350).

24.    Defendants have provided loans to consumers who reside in states across the United States, except for residents of four states.  Webb Deposition, PX08 92:6-15.  Defendants abstain from lending in South Dakota in order to avoid a perceived conflict of interest with Western Dakota Bank, where Webb works as president.  Webb Deposition, PX08 93:19-94:5; *see also* Excerpted Discovery Responses, PX11-D, p. 3 ("Payday does not make loans to any individual with a South Dakota address.")  Defendants agreed with state law enforcement officials not to offer loans in West Virginia, Maryland, and Colorado during the pendency of state law enforcement actions concerning the payday lending activities of some or all of the Defendants.  Webb Deposition, PX08 93:19-94:5.

25.    Defendants have collected on those loans through Payday Financial, using the company names "Lakota Cash" and "Financial Solutions."  Answer ¶ 21; Broome Declaration, PX01 ¶ 3, Att. A, p. 5; Scarlett Declaration, PX03 ¶ 3, Att. A, p. 6; Jones Declaration, PX04 ¶ 4-5, Att. A, pp. 5-6; Garber Deposition, PX09 142:20-143:1; *see also*, PX09 29:2-30:11, Deposition Exhibit 1 (Organizational Chart for "Payday Financial, LLC - Lakota Cash").

**A.    Defendants Engaged in Unlawful Lending Practices**

26.    Defendants offer short-term, unsecured, high-interest rate extensions of
credit, commonly referred to as "payday loans."  Cole Declaration, PX02
¶ 6, Att. B, p. 12 (consumer borrowed $500 at 537.89% APR); Edwards
Declaration, PX05 ¶¶ 2-3, Att. E, p. 29 (consumer borrowed $500 at
782.14% APR); Hildebrand Declaration PX06 ¶ 5, Att. C, p. 22 (consumer
borrowed $350 at 521.429% APR).

27.    Consumers who are interested in obtaining payday loans from
Defendants complete an online application via one of Defendants'
websites and telephone.  Webb Deposition, PX08 95:18-22; Cole
Declaration, PX02 ¶ 3; Edwards Declaration, PX05 ¶ 2; Hildebrand
Declaration, PX06 ¶ 3.  After they have submitted their application,
sometimes a day later, consumers receive and are required to sign a loan
agreement electronically to indicate that they accept the terms of the
loan.[5]  Garber Deposition, PX09, 70:16-72:14, Deposition Exhibit 5, p.
PAYDAY 000961 (policy document entitled "Lakota Cash Is An On-line
Lending Company" at mid-page: "A contract is E-signed on-line and the
money is ACH'd into the customer's account."); Edwards Declaration,

---

[5]Consumers sign for their loan by accessing the loan documents
electronically and typing in their name where the document indicates
"Borrower's E-Signature."  *See* Hildebrand Declaration, PX06, Att. C, p. 24;
Edwards Declaration, PX05 ¶ 3, Att. E, p. 34.

PX05 ¶ 3, 34; *see also* Hildebrand Declaration, PX06, Att. C, p.24; Cole

Declaration, PX02, Att. B, 16-17.

28.   Defendants include a clause in their contracts that purports to

irrevocably assign to Defendants future wages earned by consumers.

Specifically, the clause reads:

> Should you default on this Agreement, you hereby consent and
> agree to the potential garnishment of wages by us or our assigns,
> or service agents to ensure repayment of this Agreement, fees and
> costs associated in the collection of outstanding principal and
> interest.

Answer ¶ 22; Webb Deposition, PX08 17:20-19:12; Broome Declaration,

PX01, Att. A, pp. 11-12; Scarlett Declaration, PX03, Att. A, p. 13.   This

provision continues on to include a choice of law provision:

> You also expressly agree to the sole application of the Indian Commerce
> Clause of the US Constitution and the laws of the Cheyenne River Sioux
> Tribe regarding this Agreement and the potential
> preauthorizedgarnishment [sic] of wages, and the sole jurisdiction of the
> Cheyenne River Sioux Tribal Court regarding any and all matters arising
> therefrom.

29.   From at least October 10, 2009, to June 7, 2010,  Defendants' loan

agreement also includes a "Garnishment Opt-Out" provision that states:

"You may choose to opt out [of] the Garnishment provision, but only by

following the process set-forth [sic] below.  If you do not wish to be

subject to this Garnishment Provision, then you must notify us in writing

within (10) calendar days of the date of this Agreement." Answer ¶ 25; PX11-A p.3; Broome Declaration, PX01, Att. A, pp. 11-12; Scarlett Declaration, PX03, Att. A, p.13. Apart from Counsel, Defendants identify only Webb and one of his former subordinates as being responsible for recommending, approving, devising, drafting, commenting upon, or editing the above wage assignment clause. Excerpted Discovery Responses, PX11-E, pp. 3, 4.

30.   Defendants bury the wage assignment clause several pages before the signature block in an approximately seven-page, small-print document. Hildebrand Declaration, PX06, Att. C, pp 22-23; Edwards Declaration, PX05 Att. E, p. 31. The small size of the print in the loan contract and the location of the clause obscures the existence of the wage assignment clause from consumers. Hildebrand Declaration, PX06, Att. C, p. 22; Edwards Declaration, PX05, Att. E, pp. 30-31.

31.   Defendants' loan agreement has also included a provision that required consumers to authorize Defendants to initiate electronic fund transfers for withdrawal of the consumer's recurring loan payments as a condition of obtaining credit. For example:

> Any payment due on the Note shall be made by us effecting one or more ACH debit entries to your Account at the Bank. You authorize us to effect this payment by these ACH debit entries. The ACH/EFT Authorizations set forth in this Loan Agreement are to remain in full force

and effect for this transaction until your indebtedness to
us for the total of payments, plus any late or NSF fee
incurred, is fully satisfied.

Cole Declaration, PX02, Att. B, p. 13, 16; Edwards Declaration, PX05,

Att. E, pp. 28, 30; Hildebrand Declaration, PX06, Att. C, pp. 21-22; *see*

*also*, Answer ¶ 26.  Until the commencement of this action, all of

Defendants' loan contracts included a required electronic funds

provision, did not permit consumers to opt out of electronic payment,

and set up weekly or bi-weekly debits from consumers' bank accounts.

Webb Deposition, PX08, 27:17-28:4.  Apart from Counsel, Defendants

identify only Webb and one of his former subordinates as being

responsible for recommending, approving, devising, drafting, commenting

upon, or editing the above electronic transfer authorization.  Excerpted

Discovery Responses, PX11-E, pp. 3, 4.

32.    When consumers' loan agreements were approved, some of the loans

were funded from Western Dakota Bank in Timber Lake, South Dakota,

and some were funded from Wells Fargo Bank in Anaheim, California.

Webb Deposition, PX08 50:23-51:2; 71:3-10.

### B.    Defendants Engaged in Unlawful Collections Practices

33.    Defendants have engaged in collection efforts for purportedly delinquent

loans through some of their companies.  *See* Answer ¶ 27.  Using the

company names of Payday Financial,/Lakota Cash and Financial Solutions, Defendants have mailed a wage garnishment packet to the employers of certain consumers who took out their loans.  Answer ¶ 28; Webb Deposition, PX08 60:14-22, 63:9-11; Garber Deposition, PX09 20:8-10; Broome Declaration, PX01 ¶ 4, Att. A, pp. 5-10; Scarlett Declaration, PX03 ¶¶ 4-5, Att. A, pp. 6-11; Jones Declaration, PX04 ¶ 5, Att. A, pp. 6-11 (letter identifies Payday Financial/Lakota Cash). Defendants mailed these garnishment packages to employers when they were unable to collect from consumers, or reach them. Swan Deposition, PX10 46:15-25.

34.  Defendants' wage garnishment package has appeared very similar, in both form and substance, to the documents the federal government sends to employers when seeking to garnish wages pursuant to the Debt Collection Improvement Act (DCIA).[6]

35.  Defendants' garnishment packet includes documents titled:  (1) "Important Notice to Employer," and (2) "Wage Garnishment," which includes a "Wage Garnishment Worksheet" and an "Employer

_____

[6]The DCIA allows the federal government, and no other entity, to use streamlined garnishment procedures. *See* 31 U.S.C. § 3720D(a).  Specifically, once the federal government has obtained a court judgment against a consumer, the federal government can seek garnishment without a court order. Budich Declaration, PX07 ¶ 33-34, Att. AD, p. 326 (federal government Letter to Employer & Important Notice to Employer).

Certification." Garber Deposition, PX09, Deposition Exhibit 6, pp.
PAYDAY 012677-88 (Garnishment packet in Payday Financial/Lakota
Cash training manual); Garber Deposition, PX09 138:12-141:22,
Deposition Exhibit 16, (Financial Solutions Garnishment Packet);
Broome Declaration, PX01 ¶ 4, Att. A, pp. 5-10; Scarlett Declaration,
PX03 ¶ 4, Att. A, pp. 6-11; Jones Declaration, PX04 ¶¶ 4-5, Att. A, pp. 6-
11. Payday Financial and Financial Solutions shared garnishment
procedures and training materials. Garber Deposition, PX09 73:4-10,
Deposition Exhibit 6 ("Lakota Cash and Financial Solutions Garnishment
Department Manual for 2010").

36.   Similarly, the wage garnishment package sent to employers by federal
agencies seeking to garnish wages pursuant to the DCIA includes
documents titled: (1) "Letter to Employer & Important Notice to
Employer," (2) "Wage Garnishment Order (SF-329B)," (3) "Wage
Garnishment Worksheet (SF-329C)," and (4) "Employer Certification (SF-
329D)." Budich Declaration, PX07 ¶ 34, Att. AD, pp. 324-332.

37.   In the first of the documents listed above, Defendants mimic significant
portions of the federal government's "Letter to Employer & Important
Notice to Employer" in their own "Important Notice to Employer":

| Defendants' Letter | Treasury's Letter |
|---|---|
| One of your employees has been identified as owing a delinquent debt to Payday Financial LLC/Lakota Cash. | One of your employees has been identified as owing a delinquent nontax debt to the United States. |
| The Indian Commerce Clause of the United States Constitution and the laws of the Cheyenne River Sioux Tribe permit agencies to garnish the pay of individuals who owe such debt without first obtaining a court order. | The Debt Collection Improvement Act of 1996 (DCIA) permits Federal agencies to garnish the pay of individuals who owe such debt without first obtaining a court order. |
| Enclosed is a Wage Garnishment Assignment directing you to withhold a portion of the employee's pay each pay period and to forward those amounts to Payday Financial, LLC. | Enclosed is a Wage Garnishment Order directing you to withhold a portion of the employee's pay each period and to forward those amounts to us. |
| The employee has previously consented to such a garnishment and we have notified the employee that this action was going to take place, providing the employee with the opportunity to dispute the debt, and/or make payment arrangements. | We have previously notified the employee that this action was going to take place and have provided the employee with the opportunity to dispute the debt. |

*Compare* Broome Declaration, PX01 ¶ 4, Att. A, p. 5; Scarlett Declaration, PX03 ¶ 4, Att. A, p. 6; Jones Declaration, PX04 ¶ 5, Att. A, p. 6; *with* Budich Declaration, PX07 ¶ 34, Att. AD, pp. 324-332. *See also*, Garber Deposition, PX09, Deposition Exhibit 16, p.1, demonstrating identical language as Defendant's letter above, except for substituting "Financial Solutions, LLC" for "Payday Financial LLC/Lakota Cash." Defendants have modified certain phrases in the letter. Most notably, they have substituted "Payday Financial LLC/Lakota Cash" (or "Financial

Solutions, LLC") for "the United States" and substituted the "Indian

Commerce Clause of the United States Constitution and the laws of the

Cheyenne River Sioux Tribe" for the "Debt Collection Improvement Act of

1996."[7]  Defendants admit their garnishment packets contained the

above language.

38.    Despite the language in their garnishment letters stating that the

Constitution and tribal law permits Defendants to garnish wages without

a court order, Defendants are unable to point to a single tribal law or

U.S. Constitutional provision that authorizes them to do so.  Excerpt of

Supplementary Interrogatory Response, PX11-E p.3.

39.    Defendants' garnishment packet to consumers' employers has also

included a copy of the consumer's loan application.  Broome Declaration,

PX01, Att. A, pp. 11-16; Scarlett Declaration, PX03 ¶ 4, Att. A, pp. 12-18;

Jones Declaration, PX04 ¶ 5, Att. A, pp. 12-16; *see also*, Swan

Deposition, PX10, Deposition Exhibit 16.

40.    Webb decided that Defendants would send out the language and

materials contained in the wage garnishment packages to consumers'

---

[7]The balance of the documents in Defendants' garnishment package also closely resembles the documents typically sent by federal agencies.  *Compare* PX11, Deposition Exhibit 3, pp. PAYDAY 012677-88; Garber Deposition, PX09, Deposition Exhibit 16;  Broome Declaration, PX01 ¶ 5, Att. A, p. 5; Scarlett Declaration, PX03 ¶ 4, Att. A, p. 6; Jones Declaration, PX04 ¶ 4, Att. A, p. 6; *with* Budich Declaration, PX07 ¶ 34, Att. AD, pp. 324-332.

employers.  Webb Deposition, PX08 32:6- 34:2 (Discussion of Deposition

Exhibit 2, wage garnishment package).

41.  Defendants admit that they did not obtain court orders authorizing wage

garnishment before sending wage garnishment packets to consumers'

employers.  Answer ¶ 28.

42.  Defendants have also spoken over the telephone to employers and, on at

least some occasions, identified the employee as being in default on a

payday loan and Defendants' garnishment request being lawful.  Swan

Deposition, PX10 44:22-46:12; *see also*, Garber Deposition, PX09

Deposition Exhibit 6, pp. PAYDAY012668-70; *see also*, PX03 ¶ 9

(employer conversation with Defendants).

43.  Defendants sent correspondence to employers, identifying the employee

as being in default on a payday loan, and, in some circumstances,

identifying the purported amount of default.  Swan Deposition, PX10,

Deposition Exhibit 4, pp. PAYDAY000843, 000847.

44.  In some instances, despite the language in Defendants' garnishment

letters stating that consumers had been given notice of the garnishment

action and had been given an opportunity to dispute the debt,

consumers did not receive notice of the impending garnishment until

they heard from their employer.  Budich Declaration, PX07 ¶ 30. *See,*

*e.g.,* Swan Deposition, PX10, Deposition Exhibit 4, p. PAYDAY000847.

45.    Defendants admit they have filed 1,123 collections lawsuits in tribal

court against consumers who are not residents of the Cheyenne River

Sioux tribal reservation. Of those lawsuits, Defendants have obtained

sixty-one default judgments.  Only two consumers appeared to defend

these lawsuits. PX11-F p.3, 4.

### C.    The uncontroverted facts establish that Defendants' activities caused substantial consumer harm.

46.    Between May 12, 2008, and December 28, 2011, Payday Financial

funded 72,195 loans. PX11-A p. 4.

47.     Since commencing operations, Defendants have collected $35,828,675

from consumers whose loan contracts included the unlawful wage

assignment clause and unlawful electronic authorization clause.   PX11-

G, p. 3. Subtracting out the amount of that figure that represents the

principal of the loans, Defendants collected a total of $23,083,889 in

fees, interest, finance charges, and miscellaneous items.  PX11-G, p. 3.

Of the approximately $35.8 million Defendants collected, Defendants

collected $1,485,319 from consumers via consumers' employers through

Defendants' illegal wage garnishment activities ($417,740 of which was

for fees, interest, finance charges, and miscellaneous items).  PX11-G,

pp. 1,2.  Defendants collected $18,461.24 from consumers against whom a lawsuit was filed in tribal court.  PX11-F, p. 5, response no. 17(a).

48.     In addition, Defendants have subjected consumers to significant embarrassment and non-monetary harm by circumventing the requirement for a court order to garnish and seeking garnishment from, and disclosing their purported debts to, consumers' employers.  *See, e.g.,* Edwards Declaration, PX05 ¶ 8, 11.

## III.   Conclusion

In light of the above statement of facts, and Plaintiff's Motion and concurrent filings in support of Summary Judgment on Counts 1, and 3-7, Plaintiff respectfully requests this Court grant our Motion for Summary Judgment.

Dated:     January 31, 2013

Respectfully submitted,

/s K. Michelle Grajales
LASHAWN M. JOHNSON
(admitted pro hac vice)
K. MICHELLE GRAJALES
(admitted pro hac vice)
NIKHIL SINGHVI
(admitted pro hac vice)
Federal Trade Commission

600 Pennsylvania Avenue, N.W., NJ-3158
Washington, DC  20580

(202) 326-3057 (Johnson);

(202) 326-3172   (Grajales);

(202) 326-3480 (Singhvi)
(202) 326-3768 (facsimile)

Email: ljohnson@ftc.gov,

mgrajales@ftc.gov,

nsinghvi@ftc.gov

Dated: January 31, 2013

BRENDAN V. JOHNSON
UNITED STATES ATTORNEY

/s/ Cheryl Schrempp DuPris

CHERYL SCHREMPP DUPRIS
Assistant United States Attorney
P.O. Box 7240
Pierre, SD 57501
(605) 224-5402 (telephone)
(605) 224-8305 (facsimile)
Email: cheryl.dupris@usdoj.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

Page 21 of  22

**CERTIFICATE OF SERVICE**

I, Cheryl Schrempp DuPris, do hereby certify that on this 31st day of January, 2013, I caused copies of the foregoing Plaintiff's Statement of Material Facts to be served upon the following, via electronic filing, to-wit:

Cheryl Bogue
Bogue & Bogue
[boguelaw@faithsd.com]

Claudia Callaway
John Black
Katten Muchin Rosenman LLP
[claudia.callaway@kattenlaw.com]
[john.black@kattenlaw.com]

_____ /s/ Cheryl Schrempp DuPris
Cheryl Schrempp DuPris